## JAMES RIDER, adm'r &c. of Elizabeth Rider, deceased, *vs.* LAVINIA HULSE.

The property which a married woman may take, and hold as her separate estate, under the acts of 1848 and 1849, relating to the property of married women, must be acquired by inheritance, gift, grant, devise or bequest from some person other than her husband.

The fruits of her own labor, or the profits or income of any business in which she may have embarked, do not fall within the meaning of the statutes.

So, also, with regard to the interest upon moneys due to her, or held by her, at the time the acts took effect; notwithstanding such interest may have accrued after that time. It must follow the course of the principal from which it proceeds, and be subject to the marital rights of the husband.

Where the right of a husband to property belonging to his wife had become vested and complete when the acts of 1848 and 1849 took effect, it can only be defeated in the event of his death before he has reduced the property to possession, and before the death of his wife.

The money which a married woman had, at the time of her marriage, as well as that which she subsequently inherits and receives from an ancestor, with the interest accrued thereon, is subject to the marital rights of her husband; and when he survives her, it becomes his, absolutely, and she cannot bequeath the same to another, at her death.

So as to the proceeds of butter, poultry and stock sold from the farm of the husband, and coming in part from the husband's own property, and in part from the wife's care and labor.

The fact that the husband allows the wife to loan out money to whomsoever she pleases, and upon such terms as she chooses, to take securities therefor payable to herself, and to receive and re-invest it from time to time, indicates no purpose in the husband to surrender his right of survivorship; and is not inconsistent with an intention on his part to claim the money, and assert his marital right to it in the event of his surviving her.

Rider *v.* Hulse.

APPEAL from a judgment entered at a special term, upon the report of a referee, who had been directed to state the account of the property of the plaintiff's intestate which had come to the defendant's hands. The judgment directed that certain promissory notes, in the hands of the referee, be delivered by the referee to the plaintiff; that the defendant execute and deliver an assignment of said notes to the plaintiff; and that the plaintiff have judgment against the defendant for $368.92, with interest and costs. The defendant was the administratrix *cum testamento annexo* of Elizabeth Rider deceased, and the plaintiff was the administrator of the goods, chattels and credits of the deceased which she could not dispose of by will.

*W. P. Buffett,* for the plaintiff.

*George Miller,* for the defendant.

*By the Court,* BROWN, J. The plaintiff is the administrator, &c. of Elizabeth Rider, appointed by the surrogate of the county of Suffolk, by letters dated the 9th of April, 1858. She died in December, 1856, and at the time of her death, and for many years previous thereto, she was his wife. On the 17th of November, 1856, she made and published her last will and testament in due form of law, and therein gave and bequeathed the notes and choses in action which are the subject of the controversy in this action, together with all her other property, to the defendant, who was her niece. The will was duly proved and admitted to probate, and letters of administration with the will annexed were issued by the surrogate of the county of Suffolk, to Lavinia Hulse, the defendant, dated July 20, 1857. She thereupon took possession of the promissory notes and choses in action to which I have referred, claiming to hold them as owner and legatee, under the bequest, and by virtue of the letters of administration with the will annexed. The plaintiff

claims the right of property in them, subject to her debts, as husband, under the general letters of administration. The right of the husband to the personal property and choses in action of the wife whom he has survived, and the right of the wife to dispose of the same by her last will and testament by virtue of the act in regard to the property of married women, passed April 11th, 1849, are thus brought in conflict, and we are to determine which shall prevail, upon the facts disclosed by the testimony.

The plaintiff and the defendant claim the property in the notes from the deceased Elizabeth Rider. And both assume that they once belonged to her. It would seem, therefore, that her power to make a testamentary disposition of it, so as to take away the marital rights of her husband, depends upon the character and quality of the estate ; and whether it was her separate estate before the acts of 1848 and 1849 took effect, or her separate estate acquired subsequent to 1848 and under the provisions of those acts. In the case of *Westervelt* v. *Gregg*, (2 *Kern.* 209,) Judge Denio enumerates very briefly the rights of the husband to the chose in action of the wife, at the time the act of 1848 for the more effectual protection of the property of married women took effect, in the following words: " He was entitled to prosecute for it, and when recovered to take the money to his own use. He had a right to assign it for a valuable consideration, and such assignment would vest it in the assignee, and would cut off the wife's right to it in the event of her surviving him, and he might also release and discharge it. These rights were, however, subject to the jurisdiction of the courts to compel him to make a suitable provision for her, under the head of what is called the wife's equity. In the event of her dying before him, and before he had recovered the money, it would belong to him absolutely, and should he afterwards die leaving the money uncollected, his executor or administrator would be entitled to collect it without taking out administration on her estate. But should he die, leaving her

Rider *v.* Hulse.

surviving, without having reduced it to possession, and without having assigned or released it, or recovered a judgment or decree in his sole name for the money, it would survive to her, and his representatives would have no interest in it." In respect to the wife's separate estate created by deed or other instrument, the husband had no such rights. Before the statutes to which I have referred a married woman was capable of taking and holding real and personal property, with or without the intervention of trustees, for her own exclusive use, free from the interference and control of her husband, with the incidental power to dispose of it. This right, although unknown to the common law, was recognized and enforced in the courts of equity. Such separate estate is created by deed or will, and is usually conveyed, devised or bequeathed to trustees for the exclusive use and benefit of the wife with such limitations and powers as to its future descent or disposition as the parties to the settlement or the donor choose to annex to it." The intervention of trustees was not indispensable. And whenever real and personal property is given, or devised or settled upon a married woman for her separate and exclusive use without the intervention of trustees, the intention of the parties shall be effectuated in equity, and the wife's interest protected against the marital rights and claims of the husband. In all such cases the husband will be held a mere trustee for her. And although the agreement is made between him and her alone, the trust will attach upon him, and be enforced, in the same manner and under the same circumstances that it would be if he were a mere stranger." (*Story's Eq. Jur.* 1380.) The effect of the acts of 1848 and 1849, upon such estates, is to convert the equitable into a legal title in the wife, when there are no trustees, and when there are trustees vested with the legal title, to authorize a conveyance thereof to the wife under the limitations prescribed in section two of the act of 1848. It results, therefore, from this view, that if the choses in action in controversy, or the money and property which they represented,

was the separate estate of Elizabeth Rider at the time the acts referred to took effect, the plaintiff has no title thereto which he can assert, as against the bequest of the wife, because the act of 1849 expressly authorizes a married woman to convey and devise real and personal property, and any interest and estate therein, in the same manner and with the like effect as if she were unmarried.

The plaintiff, James Rider, and the deceased, Elizabeth, intermarried about the year 1831, and lived together as husband and wife until the period of her death, at Brookhaven in the county of Suffolk. They had no children. He was a ship-carpenter, by profession and employment, and was from home, engaged in this occupation, about two thirds of the time. He was the owner of a small farm upon which they both resided, she managing the farm in his absence, selling some portions of the produce and receiving the money therefor. At the time of the intermarriage she had a small sum of money, her own property, the amount of which does not appear. She also received from the estate of her deceased mother, Elizabeth Terry, $180 or $80, the executor could not tell which. This was prior to 1848. These moneys she loaned out upon notes, in divers sums and to divers persons, taking the notes payable, with the interest, in her own name. And as often as the notes were paid, the money, with the accumulations of interest, was reloaned to others, upon promissory notes payable in the same manner. At the time of her death, the notes were 18 in number, given for sums ranging from $30 to $250, dated at various times from April 22, 1843, to September 15, 1856, inclusive. The testimony and the pleadings leave no doubt that the property in dispute proceeded from these several sums of money with the accumulation of interest thereon. They lack the qualities of the separate estate of a married woman. The money which she had at the time of the marriage and that which she inherited and received from the estate of her mother, with the interest which accrued thereon, was subject to the marital rights of the husband. He could

Rider *v.* Hulse.

at any time have asserted these rights and collected and appropriated the money to his own use. He could have sold and assigned it, or released and discharged the payment of it, at his pleasure. And when he survived her it became his own absolutely. The same thing may be said of the proceeds of the butter, poultry and calves sold from the farm. These articles in part came from his own property and in part from her own care and labor. In every sense they were the husband's, and if he gave them, or some of them, to her by a declaration to that effect, it did not imply a relinquishment of his marital rights, so that she could bequeath them to a stranger, at her death. He allowed her to loan out the money to whomsoever she pleased, and upon such terms and securities as she pleased, to take the securities payable to herself, and to receive and reinvest it from time to time. He even said he would give his money to whomsoever he pleased, and Mrs. Rider could do the same with hers. These acts prove an omission of the husband to reduce the property to his actual possession in the lifetime of his wife, but they indicate no purpose to surrender his right of survivorship. In *McLean* v. *Longlands,* (5 *Ves. p.* 79,) the master of the rolls said, "Nothing less would do than a clear irrevocable gift either to some person or trustee, or by some clear and distinct act of his by which he divested himself of his property, and engaged to hold it as a trustee for the separate use of his wife. If I was to admit declarations of intention or of a disposition of property to the use of his family, I should let in a sort of evidence and upon a principle that would have a most extensive effect." (*See Walter* v. *Hodge,* 2 *Swanst.* 104.) The case of *Wadhams* v. *American Home Missionary Society,* (2 *Kern.* 415,) involved the effect of a marriage settlement between Mr. and Mrs. Wadhams. It was very full to the effect that she might enjoy, control and dispose of her property during coverture, as an unmarried woman, but contained no express authority to dispose of her estate by will. The court say : " The idea of a will is not embraced

within the power to enjoy, manage, control and dispose of the property during coverture. It is the office of a testamentary disposition to direct the course of the succession after the death of the possessor—in this case after the coverture should be at an end. There is nothing to show that the husband was willing to confer that faculty upon the wife, if he had the power to do so." The management and control of the property by Elizabeth Rider in her lifetime, and the husband suffering her to treat it and deal with it as if she was a feme sole, is not inconsistent with an intention on his part to claim it and assert his marital rights to it in the event of his surviving her.

The property which a married woman may take and hold as her separate estate, under the acts of 1848 and 1849, must be acquired by inheritance, gift, grant, devise or bequest from some person other than her husband. The fruits of her own labor or the profits or income of any business in which she may have embarked do not fall within the meaning of the acts. So, also, with regard to the interest upon moneys due to her or held by her at the time the acts took effect, notwithstanding such interest may have accrued after that time. It must follow the course of the principal from which it proceeds and be subject to the marital rights of the husband. The effect of these statutes upon rights which had vested at the time they became operative, has been the subject of judicial determination in the case of *Westervelt* v. *Gregg*, (*supra*.) Some of the judges thought it impossible to construe the second section so as to limit its provisions to property to be acquired by a wife then unmarried, after its passage. And they thought its true meaning to be that all property which she owned at the time of the marriage, and such as she had acquired by gift, devise, or otherwise during coverture, but before the passage of the act, should thereafter be deemed vested in her as though she was a feme sole, to the exclusion of the title of the husband acquired by virtue of the marriage relation. But the court held that the legislature had no

constitutional power to interfere with, or impair, rights of property which had become vested in the husband at the time the act took effect. In that case the wife was entitled to the legacy at the time of the passage of the act, and the right of the husband by virtue of the marriage relation had become vested and could not be taken away, or otherwise impaired. So in the present case, when the acts of 1848 and 1849 took effect, the plaintiff, James Rider's right to the money and property in dispute was perfect. and complete. It could only be defeated in the event of his death before he had reduced it to possession, and before the death of his wife Elizabeth — a contingency which never happened. The legislature could not interfere with it. His right to administration upon that part of her estate which she could not dispose of by will is not disputed.

The judgment of the special term should be affirmed with costs.

