## Goss *vs.* Cahill and wife, and others.

The acts of 1848 and 1849, for the more effective protection of the property of married women, are remedial statutes, and must receive a liberal and beneficent interpretation, so as to give effect to the intention of the legislature, notwithstanding some of the results may seem to proceed beyond the letter of the acts.

The manifest intention was to enable married women to take, hold, and use and enjoy real and personal property obtained in the way prescribed in the statute, and also to grant, devise and convey the same, to the same extent, and with the like effect, as if they were sole and unmarried.

Incidental to the right of property and the power of disposition is the power to improve it and increase its value.

A like incident to the use of real property, is the right to the increased value, whether it proceeds from improvements put upon it by the owner, or from a rise in value.

A married woman who borrows money upon the credit of her separate estate, makes valuable improvements upon it, and thus enhances its value beyond the cost of the expenditure, does not derive the enhanced value by any of the ways mentioned in the statute, but takes it as an incident and as a part of the property itself.

Such improvement and enhanced value, although it be deemed to be the fruits and results of the wife's skill and labor, ought not to enure to the benefit of the husband and his creditors, for the reason that the improvements are blended with and have become a part of the property itself, and no new property has been created or acquired. The value, or the equivalent in money, has been enlarged, but the lands — the property — is still the same. *Per* Brown, J.

A husband and wife, being in destitute circumstances, the wife purchased land, borrowed money and built upon it, managed it with skill and good fortune, without the interference or assistance of her husband, and all the value it had, over and above the incumbrances, was due to her good management and the rise in the value of real property in that vicinity, together

Goss *v.* Cahill.

with the use of her real and personal property. *Held* that there was no measure by which the value of the wife's services could be separated and estimated, and therefore they did not constitute property as to which the husband, or his creditors, could have any legal or equitable rights.

APPEAL by the plaintiff from a judgment entered at a special term, after a trial at the circuit.

*William Weston,* for the plaintiff.

*S. A. Stoutenburgh,* for the defendants.

*By the Court,* Brown, J.   When the evidence in this case was closed, there was no fact really in dispute.   The transactions and the acts of the parties which constituted the claim of the plaintiff, as well as those upon which the principal defendant, Margaret Cahill, relied for her defense, were established by the evidence, and the judge was not required to weigh and reconcile conflicting testimony so as to determine what the facts were.   We are to say upon this appeal whether he was right in his conclusion that the plaintiff had failed to make out a case for equitable relief.

The lands owned by Thomas Cahill, the judgment debtor, in the city of Albany, were conveyed by him to John McKnight for the nominal consideration of $3000, and by him conveyed to the defendant Margaret, upon receiving the sum of $200, which Thomas Cahill owed him.   These lands, however, were subject at the time to a mortgage to one Lemuel Steele for $1400, and another to Taylor & Deforest to secure $264.   Steele's mortgage was foreclosed, and the surplus money was absorbed in payment of subsequent incumbrances—mortgages and judgments—against Thos. Cahill. The defendant, Margaret, realized nothing whatever from these lands, and it is quite probable that the $200 paid to McKnight was more than the husband's interest in the lands was worth.   These lands, and the disposition made of them, have no connection with, or influence upon, the principal

question in this action, which grows out of the transactions in regard to the lands at Yonkers.

The first of these purchases was from Chamberlain and Lawrence and wife, for the consideration of $600. In addition to this sum, Mr. Chamberlain advanced her the sum of $1000 to enable her to build a house and improve the property, and took her mortgage to secure the payment of both sums, making together $1600. The next lot she acquired was by gift from William W. Woodworth and wife. She afterwards purchased another lot from William Radford, another from Josiah Rich and wife, and another from Richard H. and Mary F. Winslow. She executed mortgages to secure the payment of the purchase money, or a portion thereof, for these lots, except that acquired from Rich and wife, in which her husband joined, and he also joined her in the bond to Chamberlain, because, as one of the witnesses said, the lawyers advised it. She built a dwelling house and made improvements upon the property, and let it, from time to time, to tenants. And she applied the rents realized therefrom to the payment of the cost of the improvements and the purchase money for the lots. She also kept boarders upon the property for some portion of the time, furnishing board and rooms to her boarders, and also applied the profits realized from them to pay for the improvements and the purchase money for the property. The entire cost of the lots, with the improvements, exclusive of the house, was shown to have been $3600, and the cost of the house $3000, in all $6600. The mortgages existing and unpaid upon the property at the time of the trial were $3340, and the rents received from the occupants of the house for three years was shown to be $2400, excluding the moneys received from her boarders. The husband furnished no money for the purchase of the property, and he contributed neither services nor advice in the undertakings in which his wife became engaged. He was an engineer by profession, employed for a part of the time in Virginia and in Chicago, at

very moderate wages.　The proof showed him to have been intemperate at times, and withal improvident.　And while he remitted what he could spare from his earnings, to his wife at Yonkers, it was quite inadequate to support his family of seven children.　Whatever was done towards the acquisition of the property in question was done by the wife alone; and her conduct throughout all the trying circumstances, detailed in the evidence, affords a rare example of unfailing perseverance and womanly courage.　It is the just reward of this courage and perseverance—so fairly earned—that the severe diligence of her husband's creditor seeks to take from her and appropriate to the payment of his debt under a rule of the common law since become obsolete.　This debt, it is to be observed, was not contracted upon the faith or credit of this property, and the defendant Margaret has done nothing to induce the creditor to part with his property. The debt was created long before she removed to Yonkers, at which time her husband had become hopelessly insolvent. Whatever claim the plaintiff has upon the land in question must be established through the marital rights of the husband as they existed at the time it was acquired.　It remains to consider what these are.

The judge, in his findings, has negatived the idea of any fraudulent purpose in the acquisition of the title to the lands by the defendant Margaret.　Indeed the case is marked, throughout, by the entire absence of any evidence from which such a purpose can be inferred.　This finding, coupled with the express proof that the husband joined in the bond to Chamberlain and the mortgages to the others at the suggestion of the counsel, shows that no inference unfavorable to the *bona fides* of the defendant Margaret's title is to be deduced from that fact.　He probably so joined for the more perfect security of the obligee and mortgagee, suggested by the recent change of the law regulating the property of married women, rather than because the property was really his own.　The facts do not present a case under the 51st section of

the statute of uses and trusts. To create a resulting trust within the provision of that section, the grant must have been for a valuable consideration, and that consideration must have been paid by another person than the grantee. When these two things concur, then a trust results in favor of the creditors of the latter to the extent which may be necessary to satisfy their just demands. This provision proceeds upon the well established rule that, in equity, the money of the debtor belongs to the creditors and should be applied to satisfy them. Such is the effect of the case of *Garfield* v. *Hatmaker,* (15 *N. Y. Rep.* 475,) where the plaintiff attempted to recover the possession of lands upon a title made under a judgment and execution against the person paying the consideration money, the deed having been taken in the name of another. The court held that the creditor's claim was a mere equity to be satisfied out of the property thus purchased. Thomas Cahill paid no money on account of the consideration of the lands in dispute in this action. He had no agency in their purchase, and contributed nothing towards payment therefor. Such is the finding of the judge, and such is the evidence given upon the trial.

The plaintiff next claims that the purchase money of the lands was the fruits of the wife's labor, and as such belonged to the husband, and may be followed, into whatever form she may have converted them, by his creditors and appropriated to the payment of their debts. At the common law, which obtained when these transactions took place, the husband was legally entitled to the fruits and rewards of the wife's labor, and might recover and apply them as he thought right. We recognized the authority of this rule of the common law in the case of *Rider* v. *Hulse*, (33 *Barb.* 264,) since affirmed in the court of appeals, (24 *N. Y. Rep.* 372.) We held this, notwithstanding the acts of 1848 and 1849, for the more effectual protection of the property of married women. And that whatever property she claimed to hold as her separate estate must have been acquired by inheritance,

gift, grant, devise or bequest from some person other than her husband. The rule, however, must be accepted with some limitations and qualifications. The acts referred to are remedial statutes, intended to remedy and remove a disability which was thought to be unwise, unjust and a reproach to the civilization of the age. They must, therefore, have a liberal and beneficent interpretation so as to give effect to the intention of the legislature, notwithstanding some of the results may seem to proceed beyond the letter of the acts. The manifest intention was to enable married women to take, hold, and use and enjoy real and personal property obtained in the way prescribed in the statute, and also to grant, devise and convey the same, to the same extent and with the like effect as if they were sole and unmarried. Incidental to the right of property and the power of disposition, is the power to improve it and increase its value. And a like incident to the use of real property is the right to the increased value, whether it proceeds from improvements put upon it by the owner or from a rise in value. Neither of these elements of value can be separated from the property in its original and primary condition, and become an integral part of the property itself. A married woman who borrows money upon the credit of her separate estate, makes valuable improvements upon it, and thus enhances its value beyond the cost of the expenditure, does not derive the enhanced value by any of the ways mentioned in the statute, but takes it as an incident and as a part of the property itself. Such improvement and enhanced value may and would be deemed to be the fruits and results of her skill and labor, but no one would, I apprehend, think it should enure to the benefit of her husband and his creditors, for the very obvious reason that the improvements are blended with, and have become a part of the property itself, and no new property has been created or acquired. The value or the equivalent in money has been enlarged, but the lands, the property, is still the same. In *Ryder* v. *Hulse* the property claimed as the separate estate

Goss *v.* Cahill.

of the wife was derived from three sources: a small sum of money raised from her mother's estate before 1848; the proceeds and savings from a small farm owned by the husband and upon which both husband and wife resided, he being by trade a ship carpenter and absent from home two thirds of the time; and the accumulation of interest on these sums and savings. The wife had no separate estate, and the moneys in dispute did not proceed from, and had no reference to any property which she could in any sense call her own. In the present case the aspect is quite different. When Cahill and his wife went to Yonkers, they were both in destitute circumstances. She purchased the property, except the one lot given to her, borrowed money and built upon it, and by her skill and good fortune made it what it is. All there is of it, over and above the incumbrances, is due to her own good management and the rise in the value of real property in that vicinity. It is true that the profits she made from keeping boarders were also applied to the payment of the money due for the property, and these profits, it is claimed, are the fruits of the business and the rewards of her own labor. To some extent they are. But they also proceeded in a degree more or less from the use of her furniture and rooms, which was her separate property, by her boarders. Her own attention and skill, with the use of her real and personal property, were combined to produce whatever ensued in the form of profits. They cannot be separated. There is no measure by which the value of her services can be separated and estimated, and therefore they do not constitute property to which the husband or his creditors can have any legal or equitable rights.

The judgment at the special term should be affirmed, with costs.

[DUTCHESS GENERAL TERM, May 9, 1864. *Brown, Scrugham, Lott* and *J. F. Barnard,* Justices.]