## SUPREME COURT.

PIERRE RIEBEN, husband of ELIZA HICKS RIEBEN, deceased, appellant, agt. HANNAH T. WHITE, and JOHN J. MERRITT, administrator, &c., and others, respondents.

Where a *married woman* by the terms of a *trust* created for her benefit under a will, is to have the income of a certain fund and real estate during her life, for her sole and separate use, her *husband* has no *vested right* to, or interest in the income, or her savings out of the income during her life, although the marriage took place previous to the acts of 1848 and 1849. By such marriage he acquired no vested rights which could not be interfered with or taken away by his wife's *will* under these acts.

*New York General Term, November, 1864.*

*Before* LEONARD, *P. J.,* BARNARD *and* SUTHERLAND, *Justices.*

APPEAL by plaintiff from a decree of the surrogate of the city and county of New York.

ALEXANDER W. BRADFORD, *for appellant.*
CHARLES O'CONOR, *for respondents.*

By the court, SUTHERLAND, J. The trust property (the $100,000 and the real estate on Broadway), to the income of which Mrs. Rieben was entitled under her father's will, was not vested in her in her life time, but in her brothers as trustees, and by the terms of the trust she was to have the income thereof during her life, for her sole and separate use. It cannot be said, I think, that her husband, by the marriage, acquired in her life time any vested right to, or interest in the income or savings out of the income, for in equity, the income and savings were protected from her husband and his creditors by the trust, and limitation of the income to her sole and separate use. (*Methodist Episcopal Church* agt. *Jacques*, 17 *John.* 548; *Molony* agt. *Kennedy*, 10 *Simons*, 254; *Proudley* agt. *Fielder*, 2 *Mil. & K.* 57.)

The last two cases which are referred to by the counsel for the appellant on another point, also show that even such part of the savings, or such property arising from the savings as may have been in the actual possession of Mrs. Rieben at the time of her death, whether cash, bank notes or chattels, was her sole and separate property, and as such, protected against her husband in her life time, equally with the savings or accumulations of the income in the hands of her brothers, the trustees, and which had never been paid over to her. It appears by the English cases that not only the post-nuptial, but also any ante-nuptial savings out of the income of the trust property, limited to her sole and separate use, would have been considered her sole and separate property, and as such would have been protected in her life time from her husband. (*Newland* agt. *Paynter*, 4 *Myl. & Craig*, 408, 417, 418; *Davies* agt. *Thorneycroft*, 6 *Simons*, 420; 2 *Story's Eq. Juris.* § 1384, 7th ed. and cases there cited.)

It appears from the return of the surrogate, that the clothing, jewelry, &c., specifically bequeathed by Mrs. Rieben, were purchased by her from the savings of the income limited to her sole and separate use; and that all

the moneys and securities in the hands of her administra-
tor, with the will annexed, came from like savings.   Except
the $50,000 over which she had the general power of ap-
pointment, it is to be inferred that Mrs. Rieben could not
dispose of, and did not intend by her will to dispose of
any property which did not arise or come from these
savings.   Probably it should be inferred from the return
that these savings were all post-nuptial.   It cannot be
doubted if Mrs. Rieben had died without having disposed
of these savings, or the property arising therefrom, by will
or otherwise, that her husband on her death, would have
been entitled in his marital right to such savings or pro-
perty.   (*Stuart* agt. *Stuart*, 7 *John. Ch.* 229 ; *Molony* agt.
*Kennedy*, 10 *Simons, before cited* ; *Ransom* agt. *Nichols*, 22
*N. Y. R.* 141 ; *Ryder* agt. *Hulse*, 33 *Barb.* 264 ; *S. C.* 24 *N.*
*Y. R.* 372 ; *Knauth* agt. *Bassett*, 34 *Barb.* 31.)

Nor can it be doubted, I think, if her marriage had taken
place subsequent to the act of 1849, amending the married
woman's act of 1848, that Mrs. Rieben could have disposed
of such savings or property by will under the acts, though
her separate property, not by the acts but by the trust,
and the limitation of the income of the trust property to
her sole and separate use.   But it is insisted on the part
of the appellant, as the marriage took place before the
amendment of the act of 1848 by the act of 1849, so as to
give the power of devising, that by the marriage he ac-
quired vested rights, which could not be interfered with
or taken away by her will under the acts.

In my opinion the trust and the limitation of the income
of the trust property to the sole and separate use of Mrs.
Rieben, prevented his acquiring by the marriage any such
vested rights in her life time, in or to her savings from the
income by the marriage.   I think the right which he did
acquire by the marriage to succeed to the savings of her
sole and separate income in case he survived her, and in
case she did not dispose of them by will or otherwise, was

not and cannot be called a vested right, so as to raise the constitutional question. I think while the trust of the limitation of the income of the trust fund and property to her sole and separate use protected her savings from the income from her husband in her life time, and prevented him from acquiring by the marriage any vested right in her life time to or in the savings, the married woman's acts gave her power to dispose of them by will. I see nothing inconsistent in the two parts of this proposition. I think the cases of *Westervelt* agt. *Gregg* (2 *Kernan*, 305), and *Ryder* agt. *Hulse* (*supra*), do not apply, because the savings were the sole and separate property of Mrs. Rieben, by the trust, and the limitation of the income of the trust property to her sole and separate use. In *Ryder* agt. *Hulse* (33 *Barb*. 267), Justice BROWN says : " The effect of the acts of 1848 and 1849 upon such estates (estates settled upon a married woman for her sole and separate use), is to convert the equitable into a legal title in the wife when there are no trustees, and when there are trustees vested with the legal title, to authorize a conveyance thereof to the wife, under the limitations prescribed in section two of the act of 1848. It results, therefore, from this view, that if the choses in action in controversy, or the money and property which they represented, were the separate estate of Elizabeth Ryder at the time the acts referred to took effect, the plaintiff has no title thereto which he can assert as against the bequest of the wife, because the act of 1849 expressly authorizes a married woman to convey and devise real and personal property, and any interest and estate therein, in the same manner and with the like effect as if she were unmarried." I see no reason to doubt the correctness of this view of the operation of the acts of 1848-49, as to the sole and separate estate or property of a married woman when the acts took effect.

My conclusion is that the decree of the surrogate should be affirmed, with costs.