# SUPREME COURT.

JOHN M. JAYCOX and others, appellants agt. WILLIAM CALD-
WELL and others, respondents.

A *post-nuptial* contract between *husband and wife*, by which property is set apart
for her separate use, although void at law, will be sustained in equity, where
there are no creditors of the husband to be affected.

Where, at the time of the marriage of husband and wife in 1841, the wife had
money of her own, and in 1842, let her husband have $665, to use in his
business:

*Held*, that as the law then was, the husband became legally entitled to the money in
question as his own, and the possession which he acquired of it was with her
assent.

But upon the facts found in this case, the husband, as far as he could, *waived his
marital rights*, and received the fund named, not as his own, but as the *equitable
trustee* of his wife, (which he could assume voluntarily,) and by that means ob-
tained the possession of it, which for aught that appeared, he could not otherwise
have done.

The agreement between the husband and wife, though not binding at law, was valid
in equity, and sufficient as between them and all others, not then creditors of the
husband.

Consequently, an *assignment for the benefit of creditors*, made by the husband in 1867,
to pay creditors, which had become such in 1866, providing for the payment to the
wife of the assignor the sum so received by him from his wife in 1842, was valid,
and the claim a proper one to be paid out of the property of the husband.

*Fifth District, General Term, October,* 1868.
*Before* BACON, MORGAN, MULLIN *and* FOSTER, *Justices.*

APPEAL from a judgment in favor of defendants, entered
on the report of a referee. The action was brought to set
aside an assignment executed by William Caldwell, in which
he preferred Corrilla Ann, who was his wife, to the amount
of $700, the plaintiff claiming that she had no such valid
demand against him; that it was void as against his credi-
tors, and that they were creditors of his.

The referee found the plaintiffs on, or about, the 13th of
April, 1867, recovered a judgment in this court against Wil-
liam Caldwell, of upwards of $250, which was duly docketed
and a transcript thereof filed in the clerk's office of Ontario

county, on the 15th of that month. That an execution thereon, was duly issued to the sheriff of Ontario county, where William Caldwell then resided, and still resides, and that it was returned wholly unsatisfied, and so yet remains; and that the plaintiff's were still the owners thereof.

That on the 4th of March, 1867, John Crouse and others recovered a judgment in this court, against William Caldwell, for more than $100 which was also duly docketed and a transcript filed in the clerk's office of Ontario county. That an execution was duly issued to said sheriff, and returned wholly unsaisfied; that before the commencement of this action the plaintifis in that judgment assigned it to these plaintiffs' who still were the owners thereof, and that it remained wholly unpaid; that William Caldwell and Corrilla Caldwell are husband and wife and were married in the year 1841.

That on, or about, the 4th day of February, 1867, William Caldwell being then insolvent, made an assignment of all his property to Horace Miller and Wilkinson Thompson in trust for the benefit of his creditors, that said trustees failing to file the necessary security, were by an order of the supreme court, dated on, or about, February 23, 1867, removed from their said offices of trustees under the assignment, and the defendant, Marvin A. Payne, was appointed to execute the trust in their stead as assignee or receiver.

That the defendant Corrilla A. Caldwell, was named and preferred in the assignment as a creditor of William Caldwell to the amount of $700 which indebtedness was stated in the assignment to have been incurred by William Caldwell to Corrilla Ann Caldwell for monies loaned and advanced by her to him within the three years next preceding the date of this assignment.

That at the time of making the assignment, William Caldwell was actually and justly indebted to Corrilla A. Caldwell in the sum of $700 for monies borrowed by him of her

within the three years next preceding the date of the assignment.

That the defendants William and Corrilla, cohabited together since the time of their marriage; and that at the time of such marriage, Corrilla had $1,100 in monies, which belonged to her, and between that time and up to the year 1847, he had of her from that money in 1841, $65. In 1842, $600. In 1844, $100 and in 1846, $50, making in all $815; that he returned to her during the same time, in 1844, $100. In 1846, $50. And at another time $35, making in all $185.

That from the year 1846, up to the time of the assignment, he received from her said moneys; in 1848, $25; 1853, $75; 1855 or '56, $50; 1864, $100; 1866, $175; 1866, $50; and 1867, $50; amounting to $525. And returned to her during that time in 1848, $25; between 1850 and 1860, $250; and between 1860 and the assignment, $250; making the sum $525. That during the year 1841, William Caldwell after the marriage bought a horse in his own name with the $65 got that year of Corrilla, which subsequently died while he owned it.

That in 1842, he purchased and took title in his own name to a mill property and house and lot, and paid therefor, the $600 got by him of his wife; that they occupied the premises so purchased for about two years, when he failed in business, and the property was sold on judgment and execution against him and taken to pay his debts; that the wife knew of such sale, but took no steps to recover the $600 paid therefor; that the wife did not take title in her own name to any property purchased with the avails of the $1,100 which she had at the time of the marriage, until after her husband's failure in 1844 or '45; that after that time real estate was purchased in her name with the avails of said moneys, and transferred from time to time until about fifteen years ago, when the property where they now reside, in Clifton Springs, (being a house and lot,) was purchased

in her own name, with the avails of said moneys and which now is owned by her, and is of the value of over $1,500; that they have no children living; that in 1863, William commenced trading as a merchant at Clifton Springs, with Messrs. Jaycox & Green and Crouse & Co., and so continued to deal with them until January, 1866, but at that time had paid them up; that in January, 1866, Messrs. Hannah & Harmon bought in with said William a two-third interest and the business continued in the firm name until the fall of 1866, when William repurchased the interest in the business sold to Hannah & Harmon, and continued the same down to the time of the assignment; that in December, 1866, the purchases were made by William of Jaycox & Green and of Crouse & Co., upon which their judgments aforesaid were recorded against him; that after Hannah & Harmon had gone in with him in said business, they dealt with Jaycox & Green and with Crouse & Co., buying goods from time to time of them, and that when Hannah & Harmon sold to William in the fall of 1866, William and Hannah & Harmon were indebted to both Jaycox & Green and Crouse & Co. for goods sold them by Jaycox & Green and by Crouse & Co.; that after the retransfer of the business by Hannah & Harmon to William, he paid such indebtedness and contracted the indebtedness upon which the judgments were subsequently obtained against him by Jaycox & Green and by Crouse & Co.; that on the transfer by William to Hannah & Harmon, they gave him their note for $600 at two to three months, and which he delivered to his wife, and after it became due, got it again of her and received the moneys due thereon, promising to repay her the same; that at the time of the delivery of the note to her, he was insolvent and unable to pay his debts, and was, in connection with Hannah & Harmon, trading with Jaycox & Green and with Crouse & Co., and that the items of $65 received by the husband in 1841, and of $600 received by him in 1842, of the said wife, formed part of the claim for

which the wife was preferred in the assignment for $700, and that, excluding those items, there was no consideration between husband and wife either for the transfer to her of the Hannah & Harmon note or for the amount of $700 for which she was preferred in the assignment; that out of the avails of the $1,100 which she had at the time of the marriage, there was settled upon her by way of real estate, owned by her at Clifton Springs, over $1,500; that the intention of William Caldwell, in preferring Corrilla in the assignment for the sum of $700, was that she might be paid that sum for the money she let him have which belonged to her at the time of their marriage, or which was the avails thereof.

That the said assignment was made and preference given to Corrilla A. Caldwell in good faith and without the intent to hinder, delay or defraud the creditors of William Caldwell. And he found, as a conclusion of law, that the defendants were entitled to judgment for the dismissal of the complaint with costs, upon which judgment was entered and the plaintiffs appealed.

HUNT & GREEN, *for appellants.*
JOHN SNOW, *for respondents.*

FOSTER, J. The facts found in reference to the transactions between William Caldwell and his wife are proved mainly by the testimony of himself, though he is to some extent corroborated by the testimony of one Thompson, who was a brother of Corrilla Caldwell.

These transactions are subject to very great suspicions when taken in connection with all the circumstances of the case. But there is no contradiction of his testimony, and we cannot say that the referee had no right to give credit to it.

We are to assume, therefore, that all the facts found by the referee were established; and it presents the question

whether upon such a transaction, if it was all fair and honest, between the husband and wife, and 'in all respects as it is now claimed to be, the wife had such a claim upon her husband for the sums of $65 and $600, which he received from her, that he could legally provide for the payment of it out of his property, to the exclusion of any of his other creditors.

The fund from which those sums were taken was money which she had at their marriage, and there is no doubt that, as the law then was, (it being in her possession), he was legally entitled to it as his own.

If it was so situated that he could reach it by a suit at law, he could do so in despite of her, and a court of equity would not interfere to prevent it. But if it was necessary for him, in order to get it, to apply to a court of equity, it might direct a suitable provision to be made out of it for her, (*Udell* agt. *Kearney*, 3 *Cowen*, 590). If she permitted him to take the possession of it unconditionally, it became his absolutely, (*Shirley* agt. *Shirley*, 9 *Paige*, 363). So, too, if she had died before he reduced it to his possession as his own, he could have the right to do so afterwards. (*Westervelt* agt. *Gregg*, 2 *Kernan*, 202 ; *Blanchard* agt. *Blood*, 2 *Barb. S. C. R.*, 352; *Ransom* agt. *Nichols*, 22 *Y. Y.*, 110.

He might also, before he had actually reduced the money to his possession, have assigned it and it would have passed the title to it, but in that case it would have been subject to her equitable right to have a suitable provision for her out of it. (*Carteret* agt. *Paschel*, 3 *Piere Wms.*, 197; *Bates* agt. *Daudy*, 2 *Atk.*, 206, *and Westervelt* agt. *Gregg*, *supra*.)

The husband is not only entitled to all the personal property and choses in action of his wife, except when it is otherwise declared by the recent statutes, and entitled to reduce them to his possession after her death, and entitled to the proceeds of her labor while covert, but she has no right to dispose of it by will, although he permitted her to receive, manage and invest it in her own name as if it were her own

property; and evidence of such a course of dealing by the wife with personal property bequeathed to, or earned by her, and her husband's declarations that she should give her money to whom she pleased, only established an omission to exercise his marital rights in her life time, and do not imply a relinquishment of his rights in case of survivorship. (*Ryder* agt. *Hulse*, 24 *N. Y.*, 372 ; *Same Case in supreme court*, 33 *Barb.*, 264.)

It is equally true that husband and wife, especially before 1848, could make no valid contract directly between themselves which would be binding at law; and this principle is too familiar to need the citation of authorities.

It, therefore, cannot be disputed that by the marriage between William Caldwell and Corilla, he became legally entitled to the money in question as his own, and the possession which he acquired of it was with her assent.

Now, the questions are presented whether, if her assent to his possession of it was unconditional, it left any interest of ·it in her which a court of equity would protect.

And however that may be, although he could make no valid legal contract with her, could he contract or waive the marital rights which he acquired, so as to leave her an equitable right to the fund against the plaintiffs and Crouse & Co., who were not his creditors at the time of those transactions?

The jurisdiction of courts of equity to make provision for the wife out of her estate to which the husband was legally entitled, was first assumed in cases where.it was necessary for him, or those claiming under him, to apply to the court for assistance to obtain possession of ·the property of the wife, which assistance the court, acting upon the maxim that he who asks equity must do equity, withheld until an adequate settlement was made. (*Willard's Eq. Jur.*, 636 ; 1 *Peire Wms.*, 450.)

But ever since the commencement of the present century this restriction upon the jurisdiction has been exploded, and

the wife has been permitted actively to assert her equity as plaintiff. (*Id*, 636, *and* 5 *Vesey*, 737; 5 *Mylne and Craig*, 105; 11 *Sims*, 569; 4 *Hale*, 6.)

So that, as between them, her equitable interest in it, to some extent (to be found by the court), would remain though his possession of it was unconditional. But Corilla being in the actual possession of the fund, had a right as against him to retain it, or at least so much of it as the court should decide was equitable for a provision for herself, or rather to have such provision made for her out of it. And as he could not sue her at law, there was no way for him to obtain possession of it without doing equity, by making a suitable provision for her.

Upon the facts found in this case, he, as far as he could, waived his martial rights to the fund, suffered a portion of it to be retained by her to use as she would, and received the two sums of $65 and $600 not as his own, but as her equitable trustee, and by that means obtained the possession of it which, for aught that appears, he could not otherwise have done.

I think he could take it as her trustee; that he could assume the relation voluntarily so as to give her the right to treat him as such as between themselves, to the same extent as if he had been made so by an order of the court.

A post nuptial contract between husband and wife by which property is set apart for her separate use, although void at law, will be sustained in equity, where there are no creditors of the husband to be affected. (*Galick* agt. *Strong*, 3 *Paige*, 440, 452.)

"If he takes possession in the character of trustee and not of husband, it is not such a possession as will bar the right of the wife to the property if she survives him. The property must come under the actual control and possession of the husband, or the wife will take as survivor, instead of the personal representatives of the husband." (2 *Kent's Com.*, 5*th edition*, 138.)

I think the agreements between Caldwell and his wife, though not binding at law, were, according to the principles laid down in the cases, valid in equity, and sufficient as between them and all others not then his creditors. (*Partridge agt. Harens.* 10 *Paige* 618. *Wicks* agt. *Clark,* 8 *Paige* 161. *Schaffner* agt. *Rutter,* 37 *Barb.,* 44.)

Again, there seems to be no doubt that the wife, although she has a valid equity as between herself and husband in her personal estate may waive it, notwithstanding her coverture, and when waived by her, her equity is gone and her interest in it and that of her children is defeated. (*Willard's Eq. Jurisprudence,* 637.)

Now, if the wife can waive her martial rights in her personal estate, I see no reason why the husband (he having, while it remains with her, only an equity,) cannot waive his, and come into the possession of it, or a portion of it, as hers; and I see no reason why his afterwards having creditors should make any difference. The precise question has been decided in *Woodworth* agt. *Sweet* (44 *Barb.,* 268), where it is held that he may waive his martial rights to her personal estate, and that his agreement with her not to assert such rights equitably entitled her to receive from him payment of such portion of the fund as she had lent him. And as it is clear that if the husband does not in his lifetime reduce such property of the wife to his possession, it amounts to a waiver as against all except his creditors, and it belongs to her after his decease.

It would seem equally clear that he can at once make such waiver at any time, by an act done by him, provided there are then no creditors to be injured by it.

Although the case on the part of the husband and wife is quite suspicious, yet we must follow the findings of fact reported by the referee, and therefore the judgment should be affirmed.

Judgment affirmed.

This case is now pending in the court of appeals.