AUGUST BELMONT, Appellant and Respondent, *v.* ELIAS PON-
VERT et al., Appellants and Respondents.

Certain judgment creditors claiming liens upon land, dependent upon a
contested title, united to sustain the title at joint expense, and one
party, upon whose judgment the land had been sold, agreed, in case the
other would not redeem, that the judgment should be paid out of the
"future proceeds of said property" in the order specified, and that
the liens should not be used by either of the parties to the prejudice of
the other, nor otherwise than to perfect the title and cut off further
liens. The title was sustained and a title was perfected under the sale
and became vested in one of the contracting parties, who received the
rents. In an action to enforce the contract, *held*, that the rents were
included in the contract as well as the proceeds of a sale of the land,
and that the party receiving them was accountable therefor or for so
much as should be needed in addition to the proceeds of a sale to satisfy
the liens, as specified in the agreement.

*Belmont* v. *Ponvert* (3 J. & S., 208) modified.

(Argued December 9, 1875; decided January 18, 1876.)

APPEALS by both parties from a judgment of the General
Term of the Superior Court of the city of New York, affirm-
ing a judgment entered upon a decision of the court at
Special Term. (Reported below, 3 J. & S., 208.)

The complaint in this action alleged, and the court found, in
substance, that on or about the 13th day of December, in the
year 1849, the plaintiff and the defendant, Elias Ponvert, and
one Philo S. Shelton, made and executed under their hands
and seals, and delivered to plaintiff, an agreement in writing
of which the following is a copy:

"Whereas August Belmont, on the 13th day of January,
1846, recovered judgment against Daniel E. Tylee and James
J. Mapes in the Superior Court of the city of New York for
the sum of $5,550.08, which was duly docketed on that day
in the office of the clerk of the city and county of New York;
and also on the 28th day of February, 1846, recovered
another judgment in the same court against the same parties
for $7,871.84, which was also duly docketed as aforesaid; and
whereas John H. Brouwer and William Neilson, on the 17th

day of February, 1846, recovered a judgment against said Tylee and Mapes and others for the sum of $1,163.90, which was also duly docketed; and whereas the said several judgments are claimed to be liens upon the undivided half of certain premises on Vesey, Greenwich and Washington streets, in the city of New York, which undivided half is claimed to have belonged in fee to the said Daniel E. Tylee at the time of the docketing thereof, but which title is disputed by one Jane Dempsey, claiming as heir at law to her sister, the late wife of the said Daniel E. Tylee, and by purchase from the other heirs; and whereas the interest of the said Daniel E. Tylee in the said premises is also subject to a mortgage executed by him in favor of one George Lovett, bearing date the 30th day of June, 1843, to secure $12,000 and interest, upon which the usual decree of foreclosure and sale was made by the late Court of Chancery before the then vice-chancellor of the first circuit, in or about the month of June, 1846, but which decree has never been executed; and whereas the interest of the said Daniel E. Tylee in the said premises has been sold under execution on the said Brouwer and Neilson judgment; and whereas Philo S. Shelton and Elias Ponvert are owners by purchase and assignment of the said decree in favor of the said George Lovett, assigned to Loyal S. Pond, as their agent, for their use and benefit, and of the said Brouwer and Neilson judgment, and of the certificate of sale under the same, and are now, in conjunction with the firm of Chastelain & Ponvert, defending the suit of the said Jane Dempsey, and litigating the same for the purpose of establishing the title of the said Daniel E. Tylee in the said premises.

Now, in consideration of the premises and of the said August Belmont forbearing to exercise the right of redemption from the said sale under the said Brouwer and Neilson judgment, and forbearing to sell under his own judgments, and in consideration of one dollar to the said Philo S. Shelton and Elias Ponvert paid by said August Belmont, the receipt of which is hereby acknowledged, the said Shelton and Pon-

vert covenant and agree with the said Belmont, as assignees
of said mortgage and judgment, that his forbearance to
redeem shall not prejudice the lien of the said judgments, or
either of them, on the said premises in the order in which
they are entitled to payment, or his right to the payment of
the said judgments, or either of them, out of the future pro-
ceeds of said property ; but the said judgments and decrees
shall remain and continue liens upon the said property, and en-
titled to payment out of the future proceeds thereof (if sufficient
for the purpose) in the following order of priority, namely :

First. The said mortgage decree.

. Second. The said first judgment of said August Belmont.

· Third. The said Brouwer and Neilson judgment.

· Fourth. The said second judgment of said Belmont.

· Fifth. The balance of said proceeds, if any, to said Chaste-
lain and Ponvert and said Shelton.

And it is hereby mutually covenanted and agreed, in con-
sideration of the premises, that the said suit of the said Jane
Dempsey shall be litigated for the purpose of establishing
the title of the said Daniel E. Tylee in the said premises at
the joint and equal expenses of the said Shelton and Ponvert
and the said Augustus Belmont, and that each shall bear and
pay one-half of all costs and counsel fees that have been
incurred and paid by the said Shelton and Ponvert and Chaste-
lain and Ponvert in the defence of the said suit of the said Jane
Dempsey since the defence thereof was assumed by said Chas-
telain and Ponvert, and also all costs, counsel fees and expenses
hereafter to accrue until the final termination of the litigation.

. And it is hereby further expressly stipulated and agreed
that neither of the said judgments, nor the said mortgage
decree, nor the said sheriff's certificates shall be used by
either of the parties to the prejudice of the other, nor other-
wise than for the purpose of perfecting the title to the said
premises for the purpose of carrying out this agreement and
cutting off other liens and incumbrances thereon."

. The suit of Jane Dempsey, mentioned in said agreement,
was contested under the agreement, and was finally decided

by the Court of Appeals. The judgment, which was perfected February 4, 1857, sustained the Tylee title. The certificate of sale under the execution upon the Brouwer and. Neilson judgment was procured by Shelton and Ponvert to be assigned to one Dortie for the benefit of the parties litigating the Dempsey suit. Plaintiff, in consequence of the agreement, forebore to redeem, and Dortie received the sheriff's. deed December 31, 1849. On the 29th October, 1856, he conveyed to Ponvert the said undivided one-half of the premises. On the 13th December, 1849, Shelton assigned and transferred his interest in the premises to one Moses Taylor,. who, on the 20th February, 1860, assigned it to Ponvert. Under a judgment in partition a certain portion of the. premises were set off to Ponvert. A receiver had been appointed in the Dempsey suit to collect and receive the rents and profits during the litigation. After the termination thereof Ponvert presented a petition setting forth the sale on execution and the purchase by Ponvert " on behalf of himself and other creditors entitled to redeem said premises from said sheriff's sale," and asking to have a referee appointed to determine the amount payable to him of the funds in the hands of the receiver, and that said receiver be directed to pay the same over to him. The order prayed for was granted. The referee reported the amount, and the same was paid over to Ponvert, who also received the rents from the premises set off to him, accruing since February 14,. 1857. After the termination of the Dempsey litigation plaintiff applied to Ponvert to sell the premises and distribute the proceeds. This he declined to do. Plaintiff paid $1,000 toward the costs and expenses of the litigation. Defendant demanded payment of one-half of what he alleged had been paid out for costs and expenses, and on plaintiff's refusing to pay the same he brought an action to recover the same, which is still pending.

As conclusions of law, the court found that the performance by plaintiff of his agreement to pay one-half of the costs and expenses of the litigation was not a condition prece-

dent to his right of action, but that the covenants were independent; that plaintiff was entitled to have the premises set off to Ponvert, sold, and the proceeds applied according to the contract; that the rents received by Ponvert were not "future proceeds of said property," within the meaning of the contract, and plaintiff was not entitled to any share thereof; that Ponvert, having elected to bring an action for the share of the costs and expenses claimed to be due from plaintiff, and not having set up the same as a set-off or counter-claim, was not entitled to have the amount ascertained or allowed in this action; and judgment was directed accordingly, unless Ponvert within twenty days paid plaintiff's costs and the amount of his judgments.

*W. W. MacFarland* for the plaintiff. The word "proceeds," as applied to real estate, does not include rent. (*Dow* v. *Whetten*, 8 Wend., 160; 12 Mass., 71.)

*J. S. Lawrence* and *C. W. Sandford* for the defendants. A party in a suit who asks equity will be compelled to do equity. (*Comstock* v. *Johnson*, 46 N. Y., 621; *Carter* v. *Shipman*, 35 id., 533; *McDonald* v. *Nelson*, 2 Cow., 190.) The object of an agreement and the acts to be performed under it are to be taken into consideration in determining whether the covenants are independent or not. (*Jones* v. *Berkley*, Douglass, 665; *Hotham.* v. *East I. Co.*, 1 T. R., 638; *Parmelee* v. *O. and S. R. Co.*, 2 Seld., 80; *Pordage* v. *Cole*, 2 Saund., 320 [Wms. note].) Full performance by plaintiff will be deemed a condition precedent where the act to be done by plaintiff must naturally precede in the order of time what defendant is to do. (*Tipton* v. *Feiter*, 20 N. Y., 423; *Tompkins* v. *Elliott*, 5 Wend., 496; *Northrop* v. *Elliott*, 6 Cow., 296; *Johnson* v. *Wygant*, 11 Wend., 48; *Grant* v. *Johnson*, 1 Seld., 252.) The bringing of the action by Ponvert did not bar his right to insist that plaintiff should perform the covenants on his part before seeking relief upon those made by the other parties to the agreement. (*Comstock* v. *Johnson*, 46 N. Y., 621.)

·RAPALLO, J.　By this action the plaintiff seeks, among other things, to compel the defendant Ponvert to apply the rents collected by him to the payment of the liens mentioned in the agreement between the plaintiff and Ponvert and Shelton, dated December 13, 1849.　This relief was refused by the court below, on the ground that these rents did not fall within the terms " future proceeds " of the real estate mentioned in the agreement, and that those terms covered only the proceeds of a final distribution by sale of the property in question.

It is to be observed that the agreement is not, in terms, restricted to the proceeds of a sale.　The words are, " future proceeds of said property."　In speaking of chattels the term " proceeds " would, in general, be understood as referring to the proceeds of a sale, for, ordinarily, no other proceeds are derived from property of that description; and in speaking of the proceeds of lands the term proceeds may be used in such a connection as clearly to indicate that the proceeds of a sale only are intended.　But it would, in our judgment, be going too far to say that the term " future proceeds," when applied to lands, has such an exact and inflexible meaning that it necessarily excludes rents and profits.　Where parties contract in reference to interests in lands, an immediate sale of which is not contemplated, and they agree upon the disposition to be made of the future proceeds of the land, without making specific mention of rents and profits, we think the words future proceeds are sufficiently comprehensive to include rents and profits, unless, from the context or otherwise, the intention of the parties appears to have been different.

In the present case there could be no final disposition of the land by sale until the question of Tylee's title was determined, and that was to be the subject of a serious litigation. The parties to the agreement had no title to the land, but simply liens upon it, and these depended wholly upon the title of Tylee.　If they failed in the Dempsey litigation to establish the title of Tylee, all their supposed liens were

valueless.  They, therefore, combined together to sustain Tylee's title at their joint expense.  No provision was made in the agreement for any sale of the property; the time and manner of sale were uncertain.  It was, probably, contemplated that, in case they succeeded in establishing the title of Tylee, a sale would ultimately be made by virtue of some of these liens, or of a title perfected under some of them, and the parties agreed that neither of these liens should be used by either of the parties to the prejudice of the other, nor otherwise than for the purpose of perfecting the title to the said premises for the purpose of carrying out the agreement and cutting off other liens and incumbrances.

The general intent of the agreement appears to have been that all the parties thereto should contribute to the defence of the title of Tylee, upon which the rights of all of the parties depended. . That if this title were sustained, whatever might be realized from Tylee's interest in the property should be applied, in the first place, to the payment of the liens described in the agreement, and that if any surplus should remain after the satisfaction of these liens, such surplus should go to Chastelain and Ponvert and Shelton. That the liens held by the parties to the agreement should be used for their common benefit for the purpose of perfecting the title and carrying out the objects of the agreement, and that neither of the parties should use his liens to the prejudice of any of the other parties.

The title was finally perfected under the sale upon execution on the Brouwer and Neilson judgment, and became vested in the defendant Ponvert.  Upon the successful termination of the Dempsey suit, Ponvert, by virtue of the title thus acquired, obtained the payment to himself of the rents now in controversy.

These rents were the fruits of the litigation with Jane Dempsey as clearly as would be the proceeds of a sale of the land.  It is not disputed that the title which Ponvert obtained to the land was held by him for the benefit of the parties to the agreement, at whose expense the litigation had been car-

ried on ; and it is difficult to see any ground upon which these rents, obtained as an incident to that title, should take any different course from the proceeds of sale. Upon a careful examination of the agreement, we find nothing in it, or in the facts of the case, showing that such a result was contemplated or intended. On the contrary, not only was Tylee's title established at the joint expense of the parties, but it was by means of that provision of the agreement by which the plaintiff, impliedly, bound himself to forbear the exercise of his right to redeem from the sale under the Brouwer and Neilson execution, that Ponvert was enabled to obtain the title under which he collected these rents. But for this provision, the plaintiff might have placed himself in the same position which Ponvert obtained. The time to redeem was to expire on the 15th of December, 1849 ; on the thirteenth the agreement was made under which the plaintiff forbore to exercise his right of redemption, thus enabling Ponvert to obtain title under the sheriff's deed. And this the plaintiff did on the strength of the stipulation that such forbearance should not prejudice his right to the payment of his judgments out of the future proceeds of the property, and that neither of the liens (including the certificate of sale under the Brouwer and Neilson judgment) should be used by either of the parties to the prejudice of the other, nor otherwise than for the purpose of perfecting the title to the premises for the purpose of carrying out the agreement. In the face of this stipulation, it cannot be successfully contended that Ponvert had the right to use the Brouwer and Neilson judgment, and the sale thereunder, for the purpose of securing to himself all the rents and profits of the property which have accrued since the making of the agreement of December 13, 1849. The rents of the property during that long period might exceed the sum which the fee would produce on a sale. The interest on the liens has been accumulating during the same period, and these rents may be required for the purpose of satisfying them. It would be a very strange construction of the agreement to

hold that, under it, either of the parties whose lien happened to be used for the purpose of perfecting the title, acquired the right, from that circumstance, to appropriate to his own use all the rents and profits which should accrue until a sale could be compelled.

In the petition presented by Ponvert to the court for the payment to him of the rents in the hands of the receiver which he had recovered since December 31, 1849, he set forth, as appears from the twenty-seventh finding, the title derived by him under the sheriff's sale, and declared that he had obtained such legal title on behalf of himself and other judgment creditors entitled to redeem from such sheriff's sale. It seems a necessary consequence that, for the rents which he collected by virtue of such title, he should be accountable to the parties for whose benefit he obtained and held the title.

We think that the defendant Ponvert is clearly accountable for the rents collected by him from the receiver, and also for the subsequent rents up to the time when a sale shall be had, or so much of them as may be required, in addition to the proceeds of sale, for the purpose of satisfying the liens mentioned in the agreement of December 13, 1849, and that the judgment should be modified accordingly.

We concur in the conclusions of the court below that the payment by the plaintiff of his proportion of the expenses of the Dempsey litigation was not a condition precedent to the vesting of his right to the benefits secured to him by the agreement of December 13, 1849. It would have been entirely proper to have had all controversies respecting those expenses settled in this action had the defendant so elected. But, for the reasons assigned by the court below, we think it properly declined to dispose of the subject of those expenses in this action.

The judgment, as modified in respect to the rents, should be affirmed.

All concur.

Judgment accordingly.