By the Court.—Speir, J.
There was no property out of which this large indebtedness could be obtained, except the premises which were claimed by Mrs. Dempsey in the suit brought against Tylee. It was important, therefore, to sustain the title as the only source from which payment could be had. Ponvert and Shelton, and Chastelain & Ponvert were, at the time the agreement was executed, actually engaged in defending the Dempsey suit for the purpose of establishing Tylee’s title. The several parties holding these claims made common cause for the sake of preserving their several liens in their respective orders and seeming their payment. What inducements led the parties to enter into the agreement, other than as collected from its expressed terms, must, I think, be speculative. Whatever advantage, therefore, the parties may be supposed to have gained by entering into this arrangement other than is set down, need not be considered.
On the part of the defendant, the covenant is to the effect that his forbearance to redeem under his judg *536 ments, should in no way prejudice the lien of either of his judgments, or his right to their payment out of the future proceeds of the property, and that the future proceeds thereof, if sufficient for the purpose, should be applied in the order of priority of all the liens, and the balance, if any, to Ohastelain & Ponvert and Shelton.
The first mutual covenant is in effect that the said suit of said Jane Dempsey should be litigated for the purpose of establishing the title of the said Daniel E. Tylee in the said premises, at the joint and equal expense of the said Shelton and Ponvert and the defendant ; and that each should bear and pay one-half of aU costs and counsel fees that had been incurred and paid by the said Shelton and Ponvert, and Ohastelain & Ponvert in defense of the suit of Jane Dempsey, after the defense was assumed by Ohastelain & Ponvert, and all costs and counsel fees and expenses thereafter to accrue, until the final determination of the litigation.
The second mutual covenant is that neither of said judgments, nor the said mortgage decree, nor the sheriff’ s certificate should be used by either of the parties to the prejudice of the other, but for the purpose of perfecting the title to the premises, carrying out the agreement, and cutting off liens and incumbrances thereon.
Without the litigation of the Dempsey suit, and a decision sustaining Tylee’s title, there would be no property upon which these liens would attach. This covenant was therefore of equal importance to all the parties. All the covenants in the agreement are harmonious, expressing the whole intention of the parties, and, I think, are singularly clear and unambiguous, disclosing a common intent and purpose. It is to be observed that the legal status of all the parties interested at the time they entered into the arrangement *537 is carefully preserved in their covenants, the terms and conditions of which are entirely prospective, binding the parties thereto, and all of them, to refrain from performing all acts which should lead to the prejudice of each other in attaining the common end of perfecting the title to the premises, in carrying out the agreement.
The defense of the Dempsey suit was necessarily made in the names of Tylee’s assignees holding the legal title. But the assignees had no funds with which to carry on the snit. Chastelain & Ponvert could not be made parties to the action, holding no title to the premises involved in the litigation, and had they not intervened, the defense would have fallen through for want of means to present it. They were, at the time the agreement was made, conducting the defense. With these facts before the parties, they make provision for the expenses of the litigation in establishing the title by the joint and equal expense of Shelton and Ponvert and the defendant. The referee, npon the evidence before him, finds that the defense of the Dempsey suit was, in fact, assumed by Chastelain & Ponvert, and continued until the end of the litigation, and that they were the only parties who were defending the suit, for the purpose of establishing the title of Tylee to the premises. Although the assignees were not parties to the record, it is enough that Chastelain & Ponvert assumed the defense of the suit, and that fact being well known when the mutual covenant was made for paying the expenses, it cannot be said that the defense was to be conducted at the expense of the assignees.
Before the decision of the court of appeals, in the case of Belmont v. Ponvert, it had been decided in this court (3 Jones & Spencer, 208), that Mr. Belmont under the agreement, acquired no right or interest in the rents, and that he must look exclusively for the payment of his judgments to a sale of the premises.
*538 The decision in the court of appeals is in conflict with this decision in respect to such rents, and is to the effect that such rents were applicable to the payment of the judgments held by the defendant in addition to the proceeds of sale—that the rent of the premises received stands on the same footing under the agreement as proceeds of sale. The court say: “ These rents were the fruits of the litigation with Jane Dempsey, as clearly as would be the proceeds of a sale of land. It is not disputed that the title which Ponvert obtained to the land, was held by him for the benefit of the parties to the agreement, at whose expense the,, litigation had been carried on ; and it is difficult to see any ground on which those rents, obtained as an incident to that title, should take any different course from the proceeds of sale.” Opinion of the court of appeals by Rapallo, J., reported 63 N. Y. 547.
By the express terms of the agreement, the proceeds .of the property are to be applied to the payment of the mortgage decree, the judgments and the balance to Chastelain & Ponvert and Shelton, and no portion of the proceeds of the property are to be devoted to the payment of expenses. The logical result of the decision of the court of last resort is, that the plaintiff is to recover the value of the services of attorney and counsel in procuring those rents, as well as for the services in the Dempsey euit. It is difficult to see how the defendant, after receiving full payment of his judgments, can avoid contribution to the expenses of the litigation which by his covenant he agreed to make. The referee is fully sustained by the facts in evidence, and by the law of the case in allowing the claims of the plaintiff.
The decision of this court (3 Jones & Spencer),'that Mr. Belmont, under the agreement, acquired no right or interest in the rents, and that he was to look exclusively for the payment of his judgment to a sale of the premises, possibly misled the learned referee. He *539 therefore, I think, improperly deducted one-half the amount paid by plaintiff for the services of General Sandford in procuring those rents. I also think he erred in disallowing the sums paid to certain other parties, whose services stand upon the same footing as General Sandford’s.
If these views be sound, it follows that the referee was not authorised in making the foregoing deductions, and it must be held, that the services in obtaining those rents, were to be compensated at the joint costs of all the parties to the agreement.
The judgment must therefore be reversed, and a new trial ordered with costs to abide the event.
Curtis, Ch. J., concurred.