Van Vorst, J.
The testatrix, Eliza McKeon, died May 6, 1874, leaving a husband her surviving, but no children or other descendants. By her last will and testament, executed in 1869, she gave and devised all her property, real and personal, to the executors named in her will, for the purposes and upon the trusts therein declared. These were to sell all her property, real and personal, at public or private sale, and to execute and deliver all proper deeds and conveyances therefor, and to convert the same into cash when or upon such terms, and as soon after her decease as they should deem best; they were also empowered to collect all incomes, interest, dividends, &c., due to her.
With a trifling exception, the property of the testatrix consisted wholly of real estate. “ Out of the proceeds” of her estate, the executors were directed first to pay to two of her nephews $500 each; next they were directed to pay legacies to the amount of $6,000 to two religious societies.
From the “remaining proceeds” of her estate, her executors were directed to invest, in such securities as they might approve, $7,000, the income whereof they *276 •were directed to then apply to the use of the mother of the testatrix for life, and after the mother’s death;, the income, of that particular fund was directed to be paid to the husband and brother of the testatrix during their respective lives, a certain portion to each. After the death of her brother, the principal of .that portion of this fund, the income' whereof was to be paid to him, was to form a part of a trust estate created by the testatrix for the benefit of her husband, which was to embrace all the rest, residue and remainder “of the proceeds ’ ’ of her estate.
' The residuary proceeds were to be invested by the executors in securities, the income of which the executors were to collect and apply to her husband’s use during his life.
Upon the death of her husband, the testatrix gave this residuary portion of her estate, and the securities of which it should consist, to certain benevolent and religious societies. The testatrix having a husband and mother living at the date of her will, and at her death having left a husband her surviving, the testamentary disposition made of her residuary estate in favor of the religious and charitable societies cannot be fully upheld, as such disposition transgresses chapter 360 of the Laws of 1860. The will devotes the bulk of the estate to these societies.
The gift to the religious and benevolent societies to the extent of one-half of her property, after payment of the debts of the testatrix, is, however, valid. As to the remaining half part of her estate, of which no valid disposition was made, the testatrix died intestate. A controversy has arisen between the next of kin and heirs at law of the testatrix and the heirs and next of kin of Matthew McKeon, her husband, who died shortly after the death of the testatrix, as to that portion of the estate which the legatees cannot take.
It is quite clear that the testatrix intended that her *277 real estate should be converted into money. The directions to the executors, to whom, the same was devised, was to sell the same and turn it into money. The conversion was “ out and out” for all purposes, and took place from the death of the testatrix (Chamberlain v. Chamberlain, 43 N. Y. 424, 431; Dodge v. Pond, 23 Id. 69; Stagg v. Jackson, 1 Id. 206, 210).
For the purposes of distribution, among those entitled thereto, the property must be regarded as personal estate (Horton v. McCoy, 47 N. Y. 21; Moncrief v. Ross, 50 Id. 431).
The view is presented by the learned counsel for the heirs and next of kin of the testatrix, that the real estate subject to the power of sale upon the death of .the testatrix descended to her heirs at law, for the reason, as is urged, that the rents, were not given to the executors. It is suggested that the legal title was not in the executors, but in the heirs at law.
If, as is claimed, the legal title went to the heirs at law, and the rents were not disposed of, the heirs would be entitled to such rents.
But it is quite clear that, if the law works such devolution of the title, it is in opposition to the intention of the testatrix.
All her property, real and personal, was, by express words, given by the the testatrix to the executors, who were authorized to collect all her income. It is true •that the words “ rents and profits” are not used in this connection, but equivalent words are employed.
It is urged that the testatrix uses the words “due me” in connection with the words “income, interest,” &c., to strictly qualify and limit such words. But I have no idea that any such restricted use of these words was in her mind. What she doubtless intended •to give, and I think has given to her executors, was the income of all her estate, to be devoted by them to the purposes of her will. This is quite clearly indi *278 catecl by the subsequent direction that “out of the proceeds” of her estate, the executors'were to pay the legacies and satisfy all her gifts. i
This entitled them to collect the proceeds, and that term embraces rents.
In Belmont v. Ponvert (63 N. Y. 547), the word “proceeds” was held to embrace the rents realized before sale (Weld v. Strong, 54 How. Pr. 133). In Moncrief v. Ross (50 N. Y. 431, supra), a claim of a kindred nature was made by the heirs of the testator, in respect to the devolution of the real estate, but it was not sustained (Fincke v. Fincke, 53 N. Y. 528, 533).
The fact that the real estate was absolutely converted, by force of the will, “out and out,” impresses the quality of personalty upon it from the death of the testatrix. The primary purposes of the conversion were completely valid, and the fact that the ultimate beneficiaries after the death of the husband of the testatrix—the religious societies—cannot take all the “proceeds,” which was intended to be given to them, does not restore, to the part which they cannot take, the quality of realty. That part still remains personalty, and is to be distributed as such. The rule is different where there is a failure of the direct object or purpose of the conversion (Betts v. Betts, 4 Abb. N. C. 317, 419, and cases cited). The next of kin of the husband claim this portion of the estate, but I can discover no stable ground upon which such claim can be urged.
<' It is true that by the common law the husband is entitled to the personal property of his wife dying intestate, and he is entitled to recover and enjoy it as his own (Westervelt v. Gregg, 12 N. Y. 202, 206; Barnes v. Underwood, 47 Id. 351, 357).
By statute, also, the husband is entitled- to the exclusive right to administer upon and take to himself the personal estate of his wife dying intestate (2 R. S. *279 75, § 39). But there was no intestacy daring the life of the husband. During his life the disposition of the estate was valid. The whole estate was given to the executors, to be by them converted into money, out of which they were to pay certain legacies; the residue they were to hold, so long, at least, as her husband should live. No portion of the principal was given to him.
The dispositions made of her estate by the testatrix to which objection is urged, take effect after his death; and with that event, and not before, intestacy arises. Her husband, therefore, having no claim or title to any part of the principal of the estate during his life, could confer no interest to his representatives or next of kin thereto.
The portion of the estate, therefore, not disposed of at her husband’s death, goes to the next of kin of the testatrix.
The remaining question to be decided is whether the society, “ The Little Sisters of the Poor,” is entitled to the provision claimed to have been made in its favor, to the extent to which the testatrix could dispose of her property to charitable societies.
By the will the executors were directed to appropriate and apply the principal sum invested for her husband’s use, together with the securities in which they were invested, toward founding an institution, to be denominated and known as the “Little Sisters of the Poor,” “ to aid and assist the destitute poor and needy in the city of New York, if such an institution can be founded, or put into operation, by the encouraging co-operation with others, within five years after the decease of my said husband,” and if not, then the testatrix directed that the same should be paid over to “the Catholic Christian Institution” denominated “The Missionary Congregation of St. Paul the Apostle.”
*280 Before the time this will was made, and in the year 1868, there had been organized, in the city of Brooklyn, a society, formed for the purpose of aiding and assisting the poor and needy, called the “ Home for the Aged of the Little Sisters of the Poor.”
This charity was introduced into this country from Brittany, in France, where it has existed for many years. Its common designation is that of “Little Sisters of the Poor,” and is under the immediate charge of sisters of charity, who came to this country from France to organize the charity here, its first effort being in Brooklyn.
It is quite reasonable to suppose that the testatrix had in mind, in making the bequest above-named, the organization of a society in the city of New York, in connection with this order, similar to the society in Brooklyn, devoted to a work of benevolence, such as she would foster with her means. This was the cooperation, she contemplated. The evidence shows that an association called the Home for the Aged of the “Little Sisters of the Poor” of the city of New York was organized in the year 1870, and was afterwards, in the year 1871, duly incorporated, and has been, by the efforts of the charitable, put into successful operation. The declared objects of the society are to provide a gratuitous home for the aged and infirm poor of both sexes.
In its name and in the objects of its incorporation, it is in substantial accord with the society indicated by the testatrix as the one entitled to receive her bounty. The coincidence between the unusual name by which the society is named in the will and of that of the one organized about the time of the date of the will, must, it appears to me, lead to such conclusion.
And as this society was in successful operation at the time of the death of her husband, through its efforts that co-operation is afforded which the will content- *281 plated, and it seems to me that the conditions are supplied to enable it to take the gift of the testatrix.
Upon the belief that this was the society intended by the testatrix, the executors have already paid to it the sum of $7,000.
That payment must be held to have been properly made to such society, and further than that it is entitled to receive the residue of the money the testatrix could lawfully give to a society founded for charitable purposes.