RYDER, Administrator, *v.* HULSE.

At common law, a husband is entitled to the personal property and choses in action of his wife, and they are vested in him at her death, whether reduced to possession or not, in virtue of his marital right, and not of his right to administration.

The statutes of 1848 and 1849, for the protection of married women, gave no power to the wife to dispose by will of property acquired by her before the passage of the acts, or of the interest accruing after the acts upon money previously given to her, or of the proceeds of her own labor which her husband permitted her to receive, manage and invest in her own name and as if it were her own property.

Evidence of such a course of dealing by the wife with personal property bequeathed to and earned by her, and her husband's declarations that she could give her money to whom she pleased, only establish an omission to exercise his marital rights in her lifetime, and do not imply a relinquishment of his rights in case of survivorship.

APPEAL from the Supreme Court. The plaintiff, having taken out letters of administration upon the estate of his deceased wife, brought an action to recover certain promissory notes which his wife had bequeathed, by will executed in November, 1856, to the defendant, Miss Hulse, and which the latter had taken into her possession. The plaintiff and the testatrix were married in 1831. Mrs. Ryder had some money at the time of her marriage: prior to 1848 she received a further sum from the estate of her mother. Her husband was a ship carpenter, and was absent from his home a large portion of the time. He owned a farm, upon which his wife resided, and which she managed in his absence. The evidence showed that the eggs, poultry, &c., which the wife raised, were treated by him and her as her private and individual property. She invested the proceeds, with his knowledge and assent, in her own name. The promissory notes in question represented the proceeds of the sales of such small farm products, and of her own money which she had at marriage, and received from her mother's estate, with the interest thereon which she had from

Ryder *v.* Hulse.

time to time received and invested in such notes. There was evidence that her husband annually gave her a calf; that they had borne certain household expenses in common, each paying half, and that he had declared that he should give his money to whom he pleased, and Mrs. Ryder could do the same thing with hers.

The plaintiff had judgment in the Supreme Court, and the defendant appealed to this court, where the case was submitted on printed arguments.

*Miller & Tuthill,* for the appellant.

*William P. Buffett,* for the respondent.

WRIGHT, J. The property in dispute was derived from three sources: 1st, Money which the deceased had at the time of her marriage with the plaintiff, in 1831; 2d, Either the sum of $80 or $180 received from the estate of the mother of the deceased prior to 1848; and 3d, Moneys received by the deceased, during coverture, for butter, poultry, calves, &c., sold from the farm of the plaintiff. These moneys, with the accumulation of interest thereon, were loaned from time to time, by Mrs. Ryder, to divers persons, taking their promissory notes, running in her name; and at her death, in December, 1856, there were eighteen notes of various sums, amounting in the whole to $1,645. Shortly before her death, the wife made a will, bequeathing the notes, and the money represented by them, to the defendant. The plaintiff claims that the notes belong to him absolutely, with the right of possession as administrator of his wife.

The legal right of the plaintiff to the notes as his property is unquestionable, unless the effect of the statute of 1848 (amended in 1849) "for the more effectual protection of the property of married women," is to subvert such right. At common law, the husband is entitled to the personal property and choses in action of the wife. He may prosecute for them, and take the money recovered to his own use. So, also, he

may assign them for a valuable consideration, cutting off the wife's right to them in the event of her surviving him, and release and discharge them; subject, however, to the power of a court of equity to compel him to make a suitable provision for her. Should the wife die before the husband, and before the latter recover the choses in action, they would belong to him absolutely; and should he afterwards die, leaving them uncollected, his personal representatives might collect them, as a part of his assets. It is only in the event of the husband dying leaving the wife surviving him, without having reduced her choses in action to possession, and without having assigned or released them, or recovered a judgment or decree in his sole name for the money, that they would survive to her and his representatives have no interest in them. (*Westervelt* v. *Gregg*, 2 Kern., 202, and cases cited.) So, that independent of the statute above referred to, the plaintiff had an undoubted right to the notes in question as his property, insomuch that had he failed to assert the right in his lifetime, his representatives would have been entitled to collect them as a part of his assets. They cannot be claimed to have been the sole and separate property of the wife, coming by deed, will or other instrument or by implication of law (to which point attention will hereafter be given), but if they had been, she could not have disposed of them by will, without the enabling act of 1849. After the enactment of the Revised Statutes, and before the passage of the act of 1849, a married woman could not dispose of her separate personal estate by an instrument in the nature of a will. (*Wadhams* v. *American Home Missionary Society*, 2 Kern., 415.)

Now what was the effect of the act of 1848, as amended in 1849, upon the rights of the plaintiff? The second section of the act of 1848 declared that the real and personal property of any female now married shall be her sole and separate property, as if she were a single female, except so far as the same may be liable for the debts of her husband heretofore contracted. (Laws of 1848, ch. 200.) This language is broad enough to embrace all property owned by the wife at the time

of the marriage, or acquired by her by gift, devise or otherwise during coverture and before the passage of the act, excluding any title or right which the husband had acquired in it by preëxisting laws, saving only the rights of creditors. In short, the effect of the statute was to take away from the husband all right to the personal estate and choses in action of the wife acquired by virtue of the marital relation; and it was so construed in *Westervelt* v. *Gregg.* Had it therefore been competent for the legislature to enact a law thus affecting existing rights of property, the plaintiff would thereby certainly have been divested of any interest in the personal property of his wife; and the right of reducing her choses in action into possession, or assigning or disposing of them for his own use, or of enjoying them in the event of her death, would have been taken away. That the legislature could not, however, thus interfere with existing rights of property of the husband, was adjudged by this court in *Westervelt* v. *Gregg.* In that case, and also in several cases in the Supreme Court, it was held that the statute of 1848, so far as it related to existing rights of property, was unconstitutional and void. In *Westervelt* v. *Gregg,* a legacy of $5,000 had been given by her father to Mrs. Gregg; and in September, 1846, herself and her husband instituted proceedings before the surrogate of New York for the executor to account and pay over to them the amount of the legacy. Proceedings were continued until September, 1849, when a decree was made declaring that there were moneys in the executor's hands sufficient to pay the legacy, and reserving the question whether it should be paid to Mrs. Gregg or her husband, for further consideration. In November, 1849, the surrogate made a decree that the husband was entitled to recover the amount of the legacy, and directing the executor to pay it to him. On appeal by the executor the decree was affirmed both in the Supreme Court and this court. The grounds of affirmance here were, that at common law the husband was entitled to the choses in action of his wife and had the right to reduce them to possession for his own use; that this was property in the justest sense of the term, deserving

protection; and that the statute of 1848, which undertook to deprive the husband of it, was in violation of the Constitution of the State which declares that "no person shall be deprived of life, liberty or *property* without due process of law;" (Const., Art. 1, § 6.) The case clearly decides that the husband had such a vested interest in the legacy, as entitled him to recover it to his own use, not merely to collect the money on it, but to appropriate it to his own benefit, and as his own property; yet had he died before the decree of the surrogate, leaving his wife surviving, it would have gone to her, and his representatives have had no interest in it. His right to the legacy was not only vested, but also the right at any time to reduce it to possession for his own use; and these were rights of property (though qualified and conditional in the single respect that they were subject to be defeated by his death leaving them unexercised, and his wife surviving) constitutionally protected against any legislative act aiming at their overthrow or subversion. The effect of the decision was to leave the preëxisting rights of the husband in respect to the wife's personal estate by virtue of the marriage relation, untouched and unaffected by the law of 1848. It was assumed in the case (though not directly a point in judgment) that the choses in action of a wife, by virtue of the marriage relation, belonged to her husband absolutely, in the event of her death; and that the effect of such death was not, by the rules of the common law, to divest the husband of all title to, or property in, them.

The defendant's counsel, however, in the present case, insists that the common law gave the husband no property in a chose in action of his wife, not collected or appropriated to his use in her lifetime, and that if he did not exert the only right which the law vested in him, of collecting the money on it, or otherwise appropriating it to his own benefit by assignment during such lifetime, the right was gone forever. The theory is, that the property is in the wife with the qualified right in the husband to collect and appropriate it to his own benefit in her lifetime, but failing to do so he gets no title to it; but after

Ryder v. Hulse.

her death gets it merely as administrator. If it be true that, by the common law the husband has no vested property in the choses in action of his wife after her death, and that he only acquires a right to such property as her administrator, the right to administer on her estate, if given solely by statute, would not probably be a vested right that could not be taken away by the statute giving her power to make a will. But I cannot agree to this view, which supposes that the wife, after marriage and during coverture, retains such a property in her choses in action as prevents the title to them vesting in her husband. All the personal estate of a wife vests absolutely in her husband at the moment of marriage, and all she acquires during coverture immediately becomes his. This is just as true in respect to her choses in action as of any other species of her personal estate. With regard to the choses in action, she has only a contingent interest in those which her husband has failed to reduce to possession or assign or dispose of in his lifetime. It is because the law makes the husband the owner and vests the title in him, that he is vested with the further right of collecting, assigning and appropriating their proceeds to his own benefit. In the event of the wife's death, the husband does not take the choses in action not then reduced to his possession, as next of kin or under any statute of distributions, but the property is already vested in him, insomuch that should he die before recovering them they would be assets of his estate to be recovered by his representatives, and not by the representatives of the wife. The husband has such a vested interest in them that I entertain no doubt that he may, without or before administration, receive voluntary payment upon and discharge the same. By the prior death of the wife her contingent interest becomes extinct, and that of the husband becomes absolute, with the right of possession as administrator. This was the view taken of the question in *Ransom* v. *Nichols* (22 N. Y., 110). In that case it was held that all the property in a chose in action of the wife passed to the husband after her death, and that the latter had the right to receive payment upon and discharge the same without administering on his

wife's estate. This he could not, of course, do, unless title vested absolutely in him upon his wife's death; nor would such a payment and discharge be good if the husband acquires title to the chose in action only by virtue of the letters of administration of the estate of his intestate wife, which the law authorizes him to receive. It is because the husband is the owner of the chose in action that his release or discharge of it would be effectual. If he had no vested interest in it as an incident to, and flowing from, the marriage relation, but his right to administer on his wife's estate gave him the only title to recover and enjoy it as his own, it is very manifest that until the right of administration was exercised, and he thereby acquired the legal title, any voluntary payment to, or discharge by him of, a note or bond of the wife's estate would be invalid. But I do not understand that this would be so, even as to the creditors of the wife.

I have no doubt that the husband has, by the common law, a vested interest in the choses in action of his wife that may not be reduced to his possession or appropriated to his own use in her lifetime. This interest vests at the marriage, continues during coverture, and only ceases in the event of the husband dying, leaving the wife surviving, without having reduced the choses in action to his possession, or appropriated them to his own benefit in his lifetime. If he survives his wife, they belong to him absolutely. This is such a vested right as the legislature could not take away, any more than it could the right of the husband to recover and appropriate to his own use, such choses in action in the lifetime of the wife.

The plaintiff, in the present case, was entitled to the notes in controversy as his property. It can make no difference that the statute of 1849 empowered a married woman to will away her sole and separate property acquired under such act. If the legislature could not take away from the husband and give to her what by preëxisting law he was entitled to, and he was the owner of the notes, no will that she might assume to make would pass any interest in them. A married woman

cannot effectually bequeath property that she may not hold or take under the statute of 1848.

2. A remaining question to be considered is, whether the notes were the sole and separate property of Mrs. Ryder at her decease, irrespective of the statute of 1848. There is no pretext of any express settlement on the wife by deed or other instrument. Did they become her separate property by implication of law? The small sum of money which the wife had at the time of her marriage, and that which she received from the estate of her mother before 1848, with the accruing interest thereon, were subject to the marital rights of the husband, and he could at any time have collected and appropriated those moneys to his own use, and they were his absolutely in the event of her death. With regard to the proceeds of articles sold by the wife from his farm, they were in every sense his property; and the largest proportion of the funds embraced in the notes were derived from such sales. It is upon the assumption that the husband was the owner of the property, that it can be pretended at all that the wife acquired any separate estate in it. She got none by the act of 1848, nor from any person other than her husband. If she had any separate estate she could only have got it by the husband divesting himself of the property and engaging to hold it as a trustee for her separate use. This he might do as was said in *McLean* v. *Longlands* (5 Ves., 79), " by a clear irrevocable gift, either to some person as trustee, or by some clear and distinct act of his." Other declarations of an intention, or of a disposition of property to the use of the wife, could not be sufficient. Now was there any clear distinct act of the plaintiff in this case divesting himself of the property and engaging to hold it as trustee of his wife for her separate use? None, in my judgment, was shown by the evidence. He allowed her to retain the money belonging to her at marriage, and subsequently received from the estate of her mother, without asserting his marital rights; and suffered her to loan those moneys, together with moneys received for the products of his own farm to whoever she pleased, and upon such terms

and securities as she pleased; to take the securities payable to herself, and to receive and reïnvest the moneys from time to time. But there is no proof of any gift, or of any distinct affirmative act of the plaintiff divesting himself of, or setting apart any portion of, the property to the wife's separate use. All that can be said is, that he omitted to assert his marital rights during coverture in respect to the moneys of his wife, and allowed her to manage and control a part of his own property as if she were a *feme sole.* The fact that he suffered her to treat and deal with her personal property as her own, is in no wise inconsistent with an intention on his part to claim it and assert his marital rights to it in the event of his surviving her; and because she managed his farm in his absence, disposing of its products, and even, with his assent, loaning the proceeds upon promissory notes running in her name, such property was not thereby converted into the separate estate of the wife. It is true that a part of these proceeds were the fruits of her own labor; but that gave her no separate estate in those accruing after the statute of 1848, by force of such statute. Under that statute the property she may take and hold must be acquired by inheritance, gift, grant, devise or bequest from some person other than her husband. There is no proof in the case of any gift of these moneys to the wife, or any satisfactory proof of any distinct unequivocal act of the husband divesting himself of, and engaging to hold them, as her trustee. It cannot be, that because a husband suffers his wife to manage and deal with his estate as though it were her own, that he divests himself of ownership and assumes the character of her trustee to hold it to her use.

I think the judgment of the Supreme Court should be affirmed.

All the judges concurring (except SELDEN, Ch. J.; who was absent),

Judgment affirmed.