Church, Ch. J.
 

 The question presented by this appeal is, whether the husband of a wife who dies intestate, without descendants, is entitled to take and enjoy, in his own right, the personal estate of such deceased wife as against the next of kin. The surrogate of Chautauqua county decided in favor of the husband, upon a final accounting with him as administrator, and made a decree accordingly, which was reversed by the G-eneral Term in the fourth department, from which an appeal was taken by the husband to this court.
 

 At common-law, marriage is an absolute gift to the husband of the goods and chattels and personal property of which the wife is actually possessed, and of such as come to her during coverture. (Bright on Husband and Wife, 34.) As to choses in action, marriage is only a qualified gift, conditioned that
 
 *354
 
 -the husband reduce them to possession during the existence • of the marriage relation, and .when so recovered, the title vests absolutely in him. . (2 Kent’s Com., 135.)
 

 :As to the first class of property, viz., such as the wife possessed- at the time of the marriage, and such as came to her ..afterward, and also such choses in action as the husband reco:-vers- during coverture, the title is vested in the husband,, and ¡ upon his heath, they go.to his representatives,.and not to the wife; and if the wife die first, they are his after, as they •were before, her death, and no administration is necessary. ;The husband was liable for the wife’s debts during marriage, :whether he received any property by her or not; but this ■ liability ceased at her death, although he may have received property, for the reason that such property became absolutely ■ his by marriage, and, when: that relation terminated, he was under no legal obligation to appropriate his own property to the payment of her debts. (Bright on Husband and Wife, 34, 36, 41; 2 Kent’s Com., 143.)
 

 As to choses in action not reduced to possession during . marriage, if the wife survive the husband, they go to her, and, upon her death, to her .representatives;. but, if the husband survive, he has the sole .right to administer for his own benefit .-and enjoyment, in preference to the next of kin. (Williams "•on Executors,. 268; 1 Apk., 459; 2 Kent’s Com., 143; 3 Salk., 22.) - The foundation of this right has been attributed ,’’.by some to the statute Edward III, on the ground that the hus.Sband was “ the next and most lawful friend” of his wife, and (by others to a common .law right,
 
 jure rna/riti,
 
 independent Kv©f any statute. (
 
 Watt
 
 v.
 
 Watt,
 
 3 Vesey, 247; 21 Eng. Law and Eq., 339.) But, whatever the foundation of the right, it «was firmly established, at common-law, and was absolute, 'exclusive and clearly defined. as a right to administer for his ■jiownlbenefit as the successor of his wife. In fact, all administrators exercised the right of appropriating the residue of . «estates ¡to their own use for. a considerable period after the "Statuteidf 31 Edward III; the temporal courts holding, against , ¿he. spiritual courts, that they possessed this right, and the
 
 *355
 
 former were in the habit of preventing the latter from compelling distribution by prohibition. (2 P. Wins., 441; 2 Bl. Com., 515; Williams on Executors, 1857; S. T. Raym., 500.) This contest between the -spiritual and common-law courts was finally put an end to by the statute of distribution, 22 and 23 Car. II, c. 10; but, to remove all doubts respecting the rights of the husband, the explanatory act of 23 Car. II, c. 3; sec. 25, was passed, declaring that the statute of distribution should not be construed to extend to the estates
 
 oí femes covert
 
 dying intestate, but that the husband should have the right to administer and enjoy such estates as before the passage of the act.
 

 Erom this brief review it will be seen that, by the common-law and by the statutes of England, the husband became entitled to the estate of his deceased wife by virtue of the right to administer; that this right did not depend upon a title existing during marriage, but upon that which he acquired upon her death by the exclusive right to administer her estate as her successor. Instead of having the right to administer because he was entitled to the estate, he was entitled to the estate because he had a right to administer, no statute having deprived him of the residue of the estate which all administrators enjoyed before the statute of distributions. (1 Brad., 64.) Ho administration was necessary as to property the title to which had vested in him during marriage, but only to such as had not vested, and which, if the wife had survived, would have gone to her and her representatives. Hence, I think, with great respect,- that the learned judge who delivered the opinion in the court below was not strictly accurate in the conclusion that, at common-law, the husband acquired no additional rights to his wife’s estate by her death, and that
 
 “
 
 her right and title never devolved upon her husband as a consequence of her death.” The consequence of her death, was, through administration, to transfer the title to the husband. In this way he succeeded to the wife’s title upon her death. (Williams on Executors, 742, 1276 ; 2 Kent’s Com., 135 ; Bright on Husband and Wife, 36; 5 Johns. Oh., 196.)
 

 
 *356
 
 The next inquiry is, whether this common-law right of administration and enjoyment has been taken away or impaired by statute. The Revised Statutes affirm and declare the principles of the common-law, in every particular, as above stated. (2 R. S., 74, 75.) Section 29 declares the husband “ solely entitled to administration on the estate of his wife;” that, if he does not take out letters, “ he shall be presumed to have assets in his hands sufficient to satisfy her debtsand that, if he dies, leaving assets unadministered, they shall pass to his representatives as a part of
 
 Ms personal
 
 estate, subject only to the payment of her debts. Section 30 declared the husband’s representatives entitled, when he did not administer. Section 75 contains the provisions respecting the distribution of the estates "of deceased persons; but it is obvious, in view of the provisions of the twenty-ninth and thirtieth sections, and the entire absence of any provision for the husband, that they were not intended to apply to the estates of married women leaving surviving husbands, but, to remove all doubt, the seventy-ninth section was enacted, expressly exempting such estates from their operation, and declaring that their husbands “may demand, recover and enjoy” such estates, as they are entitled by the rules of the common-law.
 

 It is claimed, however, that the change of the statutes since has deprived the husband of all common-law rights to the property of his deceased wife. It is not pretended that the statutes of 1848 and 1849, standing alone, have this effect (22 N. Y., 110; 24 id., 372; 12 id., 202); but these acts, construed in connection with the amendment of the seventy-ninth section, and the repeal of the thirtieth section, in 1867, it is insisted, have produced this change. I do not think so. The seventy-ninth section, as amended in 1867, declares that the provisions of section 75, respecting the distribution of estates, “
 
 shall apply
 
 to the personal estates of married women
 
 dying leaving descendants them, surviving,
 
 and the husbands of
 
 such
 
 married women shall be entitled” to the same as a widow is entitled in the personal estate of her deceased husband. This amendment does not profess to change the law,
 
 *357
 
 except in the specified case of married women dying leaving descendants, which is not this case, and this specification would seem to exclude its general application, upon the maxim,
 
 Fxpressio unius est exelusio alterius.
 

 The substance of the whole argument for the respondent, as I understand it, is, that the husband had no right, at common-law, to the property of his deceased wife, except such as he acquired during coverture; that, as the statutes of 1848 and 1849 took away all such rights during coverture, his right to her property upon her death depended solely upon the original seventy-ninth section, which affirmatively gave it to him; and that he has now no right in his deceased wife’s estate except the limited interest provided for in the amendment. As each of the propositions upon which this conclusion rests is erroneous, the conclusion itself must fail.
 

 First. The husband, at common-law, had rights, as I have endeavored to show, to the property of his deceased wife different from and superior to those existing during marriage, viz., the right of administration and exclusive enjoyment; in effect, the absolute title, subject only to the payment of her debts.
 

 Second. The statutes of 1848 and 1849 did not affect this right. Those statutes gave the wife control of her separate estate, with power of testamentary disposition during her life; but, if she died intestate, the rights of her husband, as her successor, are not affected. They prevent the l^usband from recovering possession and acquiring title during coverture, but they do not prevent administration by him, and consequent enjoyment, of the property, upon the death of the wife. He has the same rights to property which he cannot reduce to possession, by reason of the statutes, that he had to that which he did not reduce to possession before the statutes were passed. The same principle was applied in
 
 Proudler
 
 v.
 
 Fielder
 
 (2 M. & K., 57), where, by an ante-nuptial contract, property was set apart for the intended wife to her sole and separate use, as if she were sole and unmarried. The master of the rolls said: “ These moneys were to be for the sole and
 
 *358
 
 separate-use of Mrs. Leader, as if she were sole and unmarried. This expression has no reference to the devolution of the property after her death. She is to retain the same absolute enjoyment of the moneys, and is to have the same power of disposition over them as if she were sole and unmarried; but there is not one word here to vest the property after her death in her next of kin, or to defeat the right which her surviving husband is entitled to acquire as her -administrator.” In
 
 Malony
 
 v.
 
 Kennedy
 
 (10 Sim., 25), it was held that the quality of separate property thus situated ceased at the death of the wife, and her husband was entitled
 
 jure ma/riti.
 

 Third. It follows, if this view is correct, that the rights of the husband to his deceased wife’s estate, after the statutes of 1848 and 1849, did not depend upon the -seventy-ninth section. The right of administration and consequent enjoyment was secured by the common law, and, as we have seen, was- not cut off by the statutes of 1848 and 1849. This common-law right, moreover, was expressly declared, by the twenty-ninth section, and confirmed by the thirtieth section, which last section, although repealed by the act of 1867, evinced a clear intent of preserving the rights of the husband to the wife’s estate from the operation of the statute of distributions, under all circumstances, independently of the seventy-ninth section. The seventy-ninth section, which is substantially the same as the explanatory act of 23 Car. II, was doubtless enacted from a-supposed necessity, similar to. that.which induced the passage of the latter act; but, in fact, the same necessity did not exist, because the common-law rights of the husband had not been incorporated into any statute in England, as they had been here, in the twenty-ninth and thirtieth sections. Blackstone says:
 
 “
 
 The right- of the husband, not only to administer, but'also to enjoy, exclusively, the effects of his deceased wife, depends still on this doctrine of the common law.” (2 Bl. Com., 515.) • The rule of the common law having been incorporated into our own statute by the twenty-ninth and thirtieth' sections, the necessity of another statute, declaring that the husband should take according to the com-
 
 *359
 
 moil law, is not perceived. At all events, it is manifest that the rights of the husband did not depend upon the seventy-ninth section. It is equally clear, that, if that section had been originally enacted in the form as amended in 1867, the rights of the husband would not have been affected by it, except in the single case, therein specified, of the wife’s dying leaving descendants, and, in that case, the husband would have been limited to the distribution therein
 
 specified;
 
 and such is its only effect and operation now. The twenty-ninth section, giving the husband the absolute right of administration and enjoyment, remains in full force, except as qualified by the amendment of the seventy-ninth section in 1867; but the qualification has no application unless the wife dies leaving descendants.
 

 This court has made no decision in conflict with these views. In
 
 Ransom
 
 v.
 
 Nichols
 
 (22 N. Y.,
 
 supra),
 
 the rights of the husband were affirmed, and the seventy-ninth section, with the other provisions of* the statute, were referred to in the opinion; but the point involved here was not in the case, and was not discussed. There is a single remark in the opinion of Weight, J., in
 
 Ryder
 
 v.
 
 Hulse
 
 (24 N. Y., 872), which seems to favor the view claimed; but it was not necessary or pertinent to the point involved or decided in that case.
 

 It is unnecessary to determine the effect of the repeal of the thirtieth section, until a case is presented where the husband does not himself administer upon the estate.
 

 Considerable stress was laid upon the intention of the legislature. That intention is to be ascertained by what the legislature actually did, and what it omitted to do. I think it obvious that the legislature did not intend to abrogate all the common-law rights of the husband declared in the twenty-ninth section; 1st, because it allowed that section to stand unrepealed; and, 2d, because it expressed the intention, in the amendment of the seventy-ninth section, to give the husband and wife equal rights as survivors in their respective estates, when there were descendants; and, if it was intended to interfere with the rights of the husband in other cases, it is
 
 *360
 
 presumed that the same principle of equality would have been preserved. The construction contended for would deprive the husband, in all other cases, of any interest in his deceased wife’s personal estate; while a widow is entitled to a larger interest when the husband leaves no descendants than when he does.
 

 The judgment of the Supreme Court must be reversed, and the decree of the surrogate affirmed.
 

 All concur.
 

 Judgment reversed.