Wright Robins, Appellant, v. John S. McClure, in Person and as Executor, etc., Respondent.

C., the wife of defendant, died, leaving no descendants or ancestors. She left a will, by which she gave to defendant, her husband, one-half of her residuary estate, the other half to her brother W. and her sister. Defendant was appointed executor, and qualified as such. W. died before the testatrix. The residuary estate consisted solely of personal property. In an action for the construction of the will, *held* (Danforth, J., dissenting), that defendant, by virtue of his marital rights, was entitled to that portion of the estate bequeathed to W., which bequest lapsed by reason of his death before that of the testatrix; and that letters of administration were not necessary to protect the husband's rights.

*Barnes* v. *Underwood* (47 N. Y. 351), distinguished.

*Fleet* v. *Perrins* (L. R., 4 Q. B. 536) ; *S. C.* (L. R., 4 Q. B. 500), disapproved.

The rule of the common law, recognized by the Revised Statutes (2 R. S. 75, §§ 29, 30 ; id. 98, § 79), which authorizes a husband to hold the property of his deceased wife, not only by virtue of administration, but also by virtue of his marital rights, so far as it applies to the case of a wife dying intestate, without leaving descendants, has not been changed by the various acts in relation to married women. (Chap. 200, Laws of 1848 ; chap. 375, Laws of 1849 ; chap. 90, Laws of 1860 ; chap. 172, Laws of 1862 ; chap. 782, Laws of 1867.) (Danforth, J., dissenting.)

*Sedgwick* v. *Stanton* (14 N. Y. 289), distinguished.

*It seems* that where the husband, as executor, has control over the property of his deceased wife, for all purposes of administration he occupies the same position as if he were administrator, and he acquires the same rights.

(Argued March 18, 1885 ; decided November 24, 1885.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, rendered October 16, 1884, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 33 Hun, 368.)

This action was. brought to obtain a judicial construction of the will of Caroline McClure.

Said Caroline McClure died in the month of November, 1882, leaving a will, which was thereafter proved as a will of real and personal estate, and letters testamentary thereon were issued to defendant John McClure, her husband, one of the

executors named in said will, who duly qualified and entered upon his duties as such executor.   The testatrix left no descendant or ancestor surviving.   She left but one piece of real estate, which she devised to her husband.   She also gave to him all her household furniture and effects, and also devised and bequeathed to him the one-half part of all the remainder of her estate, both real and personal, absolutely.   The other half was disposed of by the following clause of the will :

" I give and bequeath the remainder of my estate, both real and personal, to my brother, Wright Robins, and to my sister, Mrs. Elizabeth Carter, to be equally divided between them, to have and to hold unto them, their heirs and assigns, forever."

Elizabeth Carter survived her sister, but the brother, Wright Robins, died before her.   The plaintiff in this action is a nephew of the testatrix.   She also left certain other nephews and one grand-niece, the heirs-at-law of her deceased brothers.   It was admitted by the pleading that defendant has taken possession of all the estate of said testatrix, both real and personal.

The plaintiff claims that by reason of the death of said Wright Robins in the life-time of said testatrix, the provisions made in said will in his favor lapsed, and that upon her death her next of kin, to-wit, the parties hereinbefore mentioned, became and are entitled to the personal estate bequeathed to said Wright Robins, and to a distribution of the same among them, under the statute of distributions, and that the defendant holds the same in trust for them as such executor as aforesaid.

*Edward C. James* for appellant.   At common law the husband, upon the death of his wife intestate, as administrator, became entitled to her assets not already reduced by him to possession.   (*Barnes* v. *Underwood*, 47 N. Y. 351, 354, 355 ; 22 and 23 Car. II, chap. 10 ; 23 id., chap. 3.)   This right was continued by the Revised Statutes (2 R. S. 56–57, § 1; id. 60, § 21; id. 75, §§ 27, 29, 30; id. 98, § 79), but has been abolished by the Married Women Acts.   (Laws 1848, chap. 200 ; Laws 1849, chap. 375 ; Laws 1853, chap. 576 ; Laws 1860,

chap. 90, §§ 1, 7; Laws 1862, chap. 172, § 7; Laws 1867, chap. 782, §§ 3, 4, 11, 12.) At common law the surplus, or *residuum* left after payment of debts, was payable to the residuary legatee appointed by the will, and, if there was none, it was a long-settled notion that it devolved to the executor's own use by virtue of his executorship, but, whenever there was sufficient on the face of the will, by means of a competent legacy or otherwise, to imply that the testator intended that his executor should not have the residue, the undivided surplus went to the next of kin. (2 Blackst. Com. 514, 515.) So, if a legacy of the residue, or a part thereof, lapsed, the share thus falling belonged to the testator's next of kin, and the executor took and held the same in trust for them. (*Bagwell* v. *Dry*, 1 P. Wms. 700; *Page* v. *Page*, 2 id. 489; *Owen* v. *Owen*, 1 Atk. 494; *Peat* v. *Chapman*, 1 Vesey, Sr., 542; *Bennett* v. *Batchelor*, id. 63; *Armstrong* v. *Moran*, 1 Bradf. 314; *Meeker* v. *Meeker*, 5 Redf. 29; *Duncan* v. *Duncan*, 4 Abb. N. C. 278.) If such a lapse occurs in the will of a married woman, the executors hold the lapsed portion in trust for her next of kin. There was no right at common law to administration upon a lapsed legacy. Hence there is no means for the husband obtaining title thereto through administration. (*Williams* v. *Seaman*, 3 Redf. 148; *Fry* v. *Smith*, 10 Abb. N. C. 224; *Kearney* v. *Miss. Soc.*, id. 274.) One who accepts of a devise or bequest does so on condition of conforming to the will, and he is bound to give full effect, as far as he can, to its legal dispositions. (*Caulfield* v. *Sullivan*, 85 N. Y. 153; *Chamberlain* v. *Chamberlain*, 43 id. 424; *Brown* v. *Knapp*, 79 id. 136; *Bullard* v. *Benson*, 1 Demarest, 486.)

*J. W. Pickett* for respondent. Intestacy occurs in the case of a person dying and leaving a will disposing of none or part only of the personalty. (Code of Civ. Pro., § 2514, par. 1; 2 Kent's Com. 408; *Gill* v. *Brouwer*, 37 N. Y. 549; *Lefevre* v. *Lefevre*, 59 id. 434.) Personal property passes as in cases of entire intestacy where it is undisposed of by will. (*Fry* v. *Smith*, 10 Abb. N. C. 224; *Gill* v. *Brouwer*, 37 N. Y. 549;

*Lefevre* v. *Lefevre*, 59 id. 434; *Kerr* v. *Dougherty*, 79 id. 327; *Williams* v. *Seaman*, 3 Redf. 148.) At common law the husband is entitled to the personal property and choses in action of his wife. They are vested in him at her death, whether reduced to possession or not, in virtue of his marital right, and not solely by his right of administration. (Bright on Husband and Wife, 34; McQueen on Husband and Wife, 46; 2 Kent's Com. 143; *Ransom* v. *Nichols*, 22 N. Y. 110; *Ryder* v. *Hulse*, 24 id. 372; *Barnes* v. *Underwood*, 47 id. 351; *Fry* v. *Smith*, 10 Abb. N. C. 224; *Gilman* v. *McArdle*, 12 id. 414.) The Married Woman's Acts of 1848 and 1849 made no change in the common law. (*Ransom* v. *Nichols*, 22 N. Y. 110; *Ryder* v. *Hulse*, 24 id. 312; *Barnes* v. *Underwood*, 47 id. 351; *Ballance* v. *Bausch*, 8 Abb. Pr. 368; *Fry* v. *Smith*, 10 Abb. N. C. 224; *Gilman* v. *McArdle*, 12 id. 414.) The husband whose wife dies intestate has the right at any time to administer upon her estate and take title to her property, subject only to the payment of debts, and where he does not take out letters of administration he shall be presumed to have assets in his hands sufficient to pay her debts, and shall be liable therefor. (N. Y. R. S. [6th ed.], part 2, chap. 6, tit. 2, § 33; *Barnes* v. *Underwood*, 47 N. Y. 351; *Gilman* v. *McArdle*, 12 Abb. N. C. 414.) The statute of distributions applies only to the personal estates of married women dying intestate leaving descendants them surviving. (R. S. [6th ed.], part 2, chap. 6, tit. 3, § 94; *Barnes* v. *Underwood*, 47 N. Y. 351.) Where letters testamentary have been granted, letters of administration are not necessary to protect the husband's interest in the personal estate of his deceased wife. (*Ransom* v. *Nichols*, 22 N. Y. 110; *Fry* v. *Smith*, 10 Abb. N. C. 225, 232–4; *Matter of Harvey*, 3 Redf. 214.)

Miller, J. The question to be determined in this case is whether John S. McClure, the defendant and executor under the last will and testament of his wife, Caroline McClure, is entitled to that portion of the estate of the testatrix which by her will was bequeathed to her brother, Wright Robins, and

which lapsed by reason of his death prior to the death of the testatrix.

The testatrix, by her will, devised and bequeathed to her husband certain real estate and personal property, and also one-half of the residue of her estate, both real and personal, absolutely. The remainder, she gave to her brother, Wright Robins, and her sister, Mrs. Elizabeth Carter, to be equally divided between them. She left no descendants or ancestors. The residuary estate consisted solely of personal property. Her husband qualified as executor, and claims to be entitled to that portion of the estate which is lapsed, under the common law, by virtue of his marital rights.

The plaintiff claims, as one of the next of kin and heirs at law, being a son of a deceased brother of the testatrix, Isaac Robins, an interest in such unbequeathed personal property, and brings this action on behalf of himself and for the benefit of such next of kin and heirs at law as will come in and contribute to the expenses thereof.

By the common law the husband became entitled to that portion of his wife's personal property of which she was actually possessed at the time of her marriage, or which came to her during coverture. In case of the wife's death prior to that of her husband he was authorized to take out letters of administration upon her estate, and, as administrator, after the payment of her debts, if any there were, he retained and became the owner of the assets remaining in his hands as such administrator under the practice then existing, by means of which, before the statute of distributions, the administrator converted and appropriated the assets in his hands to his own use. A contest arose between the ecclesiastical and temporal courts concerning the right of the administrator to thus appropriate the funds, which contest was finally settled by the passage of the statute of distributions (22 Car. II, chap. 10), and as doubt still existed in regard to the rights of the husband, an explanatory act (23 Car. II, chap. 3) was passed, by section 25, of which it was declared that this statute should not be construed to extend to the estates of *femes covert* dying intestate, but

that the husband should have the same right to administer and enjoy such estate as before the passage of the said act.

The rule of the common law, which authorized the husband to hold the property of his wife, by virtue of administration, has been extended in this State, so as to entitle him to hold the same also by virtue of his marital rights, and numerous cases sustain this doctrine. In the case of *Ransom* v. *Nichols* (22 N. Y. 110), it was held that, where a married woman, possessed of separate personal estate, dies without having made any disposition of it in her life-time, or by way of testamentary appointment, the title thereto vests in her surviving husband, and cannot be affected by the granting of administration upon her estate to any other person. In the case cited, letters of administration had been taken out by a third person upon the wife's estate, and an action was brought against the maker of a note to recover the amount of the same, which note was originally given to the deceased wife, and afterward renewed payable to the husband and held by him. It appeared upon the trial that the amount of the note had been settled with the husband and taken up and canceled. It is said in the opinion : "The property, then, in this case, stands precisely upon the footing of choses in action of the wife, which have not been reduced to possession during the coverture. In this event the husband has the right to recover and enjoy them as his own, either as an incident to the marital relation and as flowing from it, or as an incident to his right of administration upon her estate; and for all practical purposes, it is immaterial to which source this right should be referred. This right of administration is secured primarily to the husband by the statute, and indeed, according to some authorities, it exists in the husband *jure mariti,* and wholly irrespective of any statutory provisions upon the subject." It will be noticed that the husband did not administer upon the estate of his wife, and hence it was claimed that he had no authority to interfere with her assets or to settle with the defendant who was the maker of the note. The decision expressly overrules this position and upholds his claim by virtue of his marital rights.

In *Ryder* v. *Hulse* (24 N. Y. 372), the action was brought for the recovery of certain notes bequeathed by the wife of the plaintiff, who had taken out letters of administration upon her estate, to a third person, which notes had been acquired before the passage of the Married Woman's Acts of 1848 and 1849, and it was held that the wife had no power to dispose of said notes by will, and that the plaintiff was entitled to recover, and it was laid down in the opinion by Wright, J., that all the personal estate of a wife vests absolutely in the husband at the moment of marriage, and all she acquires during coverture immediately becomes his, and that the same rule applies to choses in action, and as to those she has only a contingent interest; that in the event of the wife's death the husband does not take the choses in action not then reduced to possession by virtue of any statute of distribution or as next of kin, but the property is already vested in him, and if he should die before recovering, then they would be assets of his estate to be recovered by his representatives, and not by the representatives of his wife; that by his wife's death her interest becomes extinct, and his becomes absolute, with the right of possession as administrator. It is further said that the same view of the question was taken in the case of *Ransom* v. *Nichols* (22 N. Y. 110), which is commented upon, and the rights of the husband by virtue of the marital relation fully sustained.

In *Olmsted* v. *Keyes* (85 N. Y. 602) the rule laid down in the cases cited is fully upheld. It is said, in the opinion by Earl, J., that " all the choses of the wife, not reduced to possession during the joint lives, by the common law, passed to the husband upon her death. * * * He may then release them or take payment of them without administration, if he can get payment. If administration is needed to reduce the choses to possession he is entitled to it, and if there are no debts the administration is solely for his benefit. If, after his wife's death, the husband does not release, assign or reduce to possession her choses in action during his life-time, then after his death his personal representatives are entitled to administration upon them for the benefit of his estate as part of his assets." (See,

also, *Westervelt* v. *Gregg*, 12 N. Y. 210; 2 Kent's Com. 136, 143; Reeve's Dom Rel. [1st ed.] 1.)  In *Barnes* v. *Underwood* (47 N. Y. 351), it is held in the opinion that, at common law, marriage is an absolute gift to the husband of the goods and chattels and personal property of which the wife is actually possessed and of such as come to her during coverture.  As to choses in action marriage is only a qualified gift, conditioned that the husband reduce them to possession during the existence of the marriage relation, and when so recovered the title vests absolutely in him.  It is there said that the husband became entitled to the estate of his deceased wife by virtue of the right to administer; that this right did not depend upon a title existing during marriage, but upon that which he acquired upon her death by the exclusive right to administer her estate as her successor.

In that case no notice is taken of the decisions of this court already cited, which had previously been made and in which it was laid down, as we have seen, that the husband, at common law, became vested with all the personal property of his wife by virtue of the marital relation and not solely as administrator, and as these cases are not considered or discussed in the opinion, and no dissent expressed in reference to the same, the rule therein stated cannot be regarded as overruled or in any way affected or impaired.  Until this is done by an authoritative decision of this court they must stand as the settled law of the State applicable to cases involving the same or any similar question.

We are not referred to any case in the English reports where the rule of the common law is stated exactly and in the precise form as in *Barnes* v. *Underwood* (*supra*).

In *Fleet* v. *Perrins*, which was first reported in L. R., 3 Q. B. 536, and afterward on appeal in L. R., 4 Q. B. 500, it was held that, where the defendant received money from a third person, to be appropriated to the use of a married woman, and he wrote telling her he held the money at her disposal and the wife died, and then her husband; and the wife's administratrix sued the defendant for money had and received to the use of

the wife, the action was rightly brought by the wife's representative, as the facts showed only a chose in action conferred on the wife, with which the husband had not interfered during coverture.

In the case last cited the distinct objection was taken that the action could not be maintained by the plaintiff as administratrix of the wife, on the ground that it was for money received by the defendant for the wife during coverture, and that, as her husband survived her, the administratrix of the husband was alone entitled to sue for the recovery of it. The decision in this case sustains the doctrine, no doubt, that, where the husband has not interfered with the choses in action of the wife during her life, the same pass to her next of kin and that his representatives, upon his death, after the death of the wife, have no right thereto as a part of his estate to which he was entitled by virtue of the marital relation.

While it is nowhere laid down in the case last cited that the husband who survives the wife is entitled to her personal estate as administrator and not by virtue of the marital relation, the conclusion arrived at is nevertheless in conflict with the current decisions of the courts of this State, as we have seen, and it should not be follcwed.

The rule of the common law, as explained by these decisions, was fully recognized by the provisions of the Revised Statutes.

The husband was solely entitled to letters of administration upon his wife's estate, and if he failed to take out letters he was presumed to have assets in his hands sufficient to pay her debts, and was held liable therefor; and if he died leaving any assets of his wife unadministered, they passed to his executors or administrators as part of his personal estate, but subject to her debts. (2 R. S. 75, § 29). If any one else administered the husband was entitled to the assets which remained after the payment of debts. (2 R. S. 75, § 30). And it was further provided that the statute of distribution should not apply to the personal estate of married women, but it was declared that their husbands might demand, recover and enjoy the same as they are entitled by the rules of the common law. (2 R. S. 98,

§ 79.) The enactments referred to remained in force until a new system was inaugurated having in view the protection of the rights of married women, under which material changes were made in the laws in respect to the same as they had previously existed. These laws embrace enactments by the legislature at different times, and contained provisions in reference to the separate estates of married women which did not exist at common law or under the statutes of Great Britain, or the statutes of this State, as will be seen by a reference to the same.

The first enactment (Chap. 200, Laws of 1848, as amended by chap. 375, Laws of 1849) declared that the wife's property should not be subject to the disposal of her husband or liable for his debts, but should continue her sole and separate property as if she were a single female, and she was empowered to take and hold property and convey and devise the same as if she were unmarried. By chapter 576, Laws of 1853, the husband was exempted from the payment of his wife's debts contracted before her marriage. By chapter 90, Laws of 1860, and by chapter 172, Laws of 1862, other provisions were made in conformity with the previous enactments, the effect of which was to separate the estate of a married woman from the control of her husband, and confer upon her the same rights as if she were unmarried, and relieve the husband from the liability previously existing for the payment of her debts. Then followed chapter 782, Laws of 1867, which contained other provisions of a similar character, and among other things an amendment to section 79 of the Revised Statutes (*supra*), by the repeal of its former provisions, and making it read as follows : " § 79. The preceding provisions respecting the distributions of estates shall apply to the personal estates of married woman dying, leaving descendants them surviving; and the husband of any such deceased married woman shall be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband, by the provisions of this chapter, and no more." By section 11 of the same act, section 30 of the Revised Statutes (*supra*), was repealed.

In view of the changes thus made, the question arises what effect is to be given to the enactments last named. It is claimed by the appellant's counsel that the amendment of section 79 and the repeal of section 30 did not leave the common law *in proprio vigore* as the General Term assumes; that they were affirmative of the common law; that where a statute affirmative of the common law is abolished, the common law must likewise be abolished otherwise the repealing act would be a nullity. These provisions made the following changes: *First.* That under section 79, instead of the husband being entitled to the whole of the wife's personal estate, he was only entitled by the amendment, when the married woman died leaving descendants, to the same distributive share as a widow would have in the estate of her deceased husband. *Second.* By the repeal of section 30, where letters of administration were granted to any other person than the husband, the administrator would be bound, in case the person dying left descendants, as provided in section 79, to pay over to the husband only one-third of the personal estate, and divide the balance among the descendants. It will be seen that no provision was made for the distribution of the estate, where a married woman died without leaving any descendants, and leaving a husband her surviving.

The provisions of the statutes to which we have referred were the subject of consideration in *Barnes* v. *Underwood* (*supra*), and it was there held, that the amendment of the seventy-ninth section of the statute of distribution in 1867, did not affect the right of the husband to administration and enjoyment of his deceased wife's personal estate, except in the case therein specified, of her dying leaving descendants. CHURCH, Ch. J., after discussing the effect of section·79 as amended, and the repeal of section 30, says: "It is equally clear that; if that section had been originally enacted in the form as amended in 1867, the rights of the husband would not have been affected by it, except in the single case, therein specified, of the wife's dying leaving descendants, and, in that case, the husband would have been limited to the distribution therein specified; and

such is its only effect and operation now. The twenty-ninth section, giving the husband absolute right of administration and enjoyment, remains in full force, except as qualified by the amendment of the seventy-ninth section in 1867; but the qualification has no application, unless the wife dies leaving descendants. * * * It is unnecessary to determine the effect of the repeal of the thirtieth section, until a case is presented where the husband does not himself administer upon the estate."

As the testatrix in the case at bar left no descendants, her husband became entitled to the same interest in her personal property as though the amendment of section 79 and the repeal of section 30 had not been made, either as administrator, if he was authorized to administer upon her effects, or, if not, as we have seen, by virtue of his marital rights under the decisions of the courts in this State. That he was unable to administer by reason of his being executor under his wife's will could make no difference, as the law established his rights independent of his right to administer. In either case the property belonged to him, and he could not be deprived of his rights because his wife left a will in which provision was made for him, and he was appointed executor and acts as such and accepts a devise and bequest in his favor under the will.

If the husband had not accepted the appointment of executor under the will and refused to qualify, and if an administrator had been appointed with the will annexed, could it be said that he waived his rights as husband at common law and that the estate thereby passed to the next of kin or heirs at law of the deceased? The amendment of section 79 only affected his interest where the wife died leaving descendants, and under that provision alone it cannot be claimed that the husband would be deprived of his rights at common law, and although the repeal of section 30 left no provision for the payment of assets to the husband by the administrator, as the Married Woman's Acts of 1848 and 1849, as we have seen and as the authorities hold (*Ransom* v. *Nichols*, 22 N. Y. 110; *Ryder* v. *Hulse*, 24 id. 372; *Barnes* v. *Underwood*, 47 id. 351; *Vallance* v. *Bausch*, 8 Abb. Pr. 368; *Fry* v. *Smith*, 10

Abb. N. C. 224; *Gilman* v. *McArdle*, 12 id. 414), made no change in the common law as to the husband's rights, it is a fair and legitimate inference that the common law remained in force and was applicable in such a case. The repeal of section 30 was essential to give force to the amendment of section 79, as it was inconsistent with the latter provision, and it does not appear that it affected any other statute. Under section 29 the husband was still entitled to letters of administration, and the common law alone remained in force. If otherwise competent, he was entitled solely to take out letters of administration, and if he did not take them out he was presumed to have assets in his hands sufficient to pay her debts, and was liable therefor.

While entitled to her estate at common law, there would seem to be no valid ground for holding that he should be deprived of the same if unfortunately, by reason of incompetency, he was unable to administer. In the case considered the husband would have been competent to act as administrator but for the will of his deceased wife, and having acted as executor he holds the portion of the estate as to which she died intestate, in his hands as such. Letters of administration, therefore, are not necessary to protect his interest, and no reason would seem to exist why, as at common law he was entitled to her estate, he could not hold that portion which lapsed by reason of her intestacy in regard to the same.

It may also be remarked that no person but the husband has administered upon the estate of the testatrix, nor was any person in opposition to him entitled to letters of administration. As executor for all purposes of administration he has exercised control over the property of his deceased wife. Although in name there is a difference between executor and administrator, there is really none in fact and in law, and each has control over the personal estate and the distribution of the same. His administration as executor under the will is in most respects the same as if he was an administrator under the statute, and as the portion undisposed of by the testatrix belongs to him, no reason exists why he should not retain it. This view

is supported by *Fry* v. *Smith* (10 Abb. N. C. 225), which, although a Special Term decision, is entitled to weight. The case of *Kearney* v. *Miss. Soc.* (10 Abb. N. C. 274), which was previously decided by the same judge, is claimed to be inconsistent with *Fry* v. *Smith.* In the first case cited a distinction was made between the two cases, and it was held that if the latter case cited announced doctrines in opposition to the conclusion reached in the former, to that extent it could not be followed. (See, also, *Williams* v. *Seaman*, 3 Redf. 148.)

The appellant's counsel relies upon the case of *Sedgwick* v. *Stanton* (14 N. Y. 289), as authority for the position that where a statute affirmative of the common law is abolished, the common law must likewise be abolished. In that case the question presented was in reference to the effect of the repeal of a statute in regard to maintenance, and the court held that the repeal of the statute abolished the common law of which it was declaratory. It will be seen that this related to a particular offense against a law establishing a crime, and under such circumstances there is the strongest reason for holding that when the statute was repealed no crime existed according to law. Section 30 of the Revised Statutes, which has been referred to, was only one of a series of provisions in regard to the distribution of property, and was evidently repealed because it came in conflict with section 79, as amended by the same act that repealed section 30. As it is manifest that it was repealed for the purpose of harmonizing different provisions of law, and other general provisions were left in force, and as to some of these provisions the common law was held to prevail by the decision of the court, the case cited is not in point.

There is nothing, we think, in the decisions or in the statutes which sustains the position that the effect of the Married Woman's Acts, which authorize her to make a will, is to extinguish the husband's right to any portion of her personal estate, except so much thereof as the will gives him, where, by the lapse of a legacy, she dies intestate as to some part thereof. In such a case the portion which becomes lapsed is undisposed of,

and it is not apparent why it would not be regarded the same as if she had made no will. As to that part, she certainly dies intestate, and no sound reason is urged why the rules relating to intestacy should not be held to apply. No argument, we think, can fairly be derived favorable to the intention of the legislature to abolish the common law in such a case, and the tendency of the decisions in this class of cases is to uphold the rights of the husband at common law unless they are expressly taken away by legislative enactment.

The doctrine of election has no application to this case.

The judgment should be affirmed.

DANFORTH, J. (dissenting). It must be conceded that the tendency of decisions in this court is to uphold the rights of the husband as they existed at common law, and if the facts before us were like those on which the decisions stand, I should feel constrained to assent to the affirmance of the judgment. They are, however, not identical, and I feel at liberty to dissent, putting my vote on what seems to me the true construction of the statutes relating to married women. By their express terms the wife's estate was to continue her sole and separate property as if she were a single female. (Laws of 1848, chap. 200; 1849, chap. 375; 1860, chap. 90.) As to it, therefore, she is to be regarded as unmarried, and I am unable to see how any portion could pass to her husband *jure mariti.* The general contention in support of the judgment is that the quality of separate property is extinguished by the wife's death. I cannot so read the statutes, nor do I find therein any words of limitation. At common law the woman, by marriage, became merged or incorporated in the man, and the same event vested in him, as by gift, her property. On the other hand, the statute (1848, *supra,*) not only permits her to retain it with like effect as if unmarried, but expressly declares that it shall not be subject to the disposal of her husband. By these words the intention of the legislature is made plain, and it carries out the title of that act, which is "for the more effectual protection of the property of married

women." The body of the act shows that this protection is against the rights of the man theretofore acquired by coverture. It is made effective by changing the character of the wife's estate, and giving it the incidents which belong to the property of a single woman. The statute does not change this character at her death, and it follows that her husband can take no part of it under the common law by virtue of any marital rights. The judgment is to the contrary, and should, I think, be reversed.

RAPALLO, ANDREWS and EARL, JJ., concur with MILLER, J.; DANFORTH, J., dissents; RUGER, Ch. J., and FINCH, J., do not vote.

Judgment affirmed.