JOSEPH ANNIN, RESPONDENT, v. GEORGE WREN AND WILLIAM C. WREN, APPELLANTS.

*Contract to assist another person to invent improvements — one so employed cannot take out letters in his own name for inventions so made.*

This action was brought to compel the defendant, George Wren, to assign certain letters patent for an invention in hand-trucks issued to him, as the assignee of W. C. Wren, his brother, who, claiming to be the inventor of the improvement, had applied for letters patent.

It appeared upon the trial of the action that the plaintiff while engaged in the business of manufacturing iron wheelbarrows and trucks, and in endeavoring to improve the same, had employed the defendant, W. C. Wren, at a weekly salary, to apply himself personally to the development of this business, and that the said Wren, while so assisting him, had made certain inventions, and had made drawings and models thereof for the purpose of procuring letters patent to be issued to the plaintiff. While so remaining in the employment of the plaintiff, Wren secretly made application for letters patent to be issued to himself, and he assigned the same to his brother George, who obtained the letters patent knowing of the rights of the plaintiff thereto and of the facts and circumstances upon which they were based.

*Held*, that the court had jurisdiction over the subject-matter and parties, and that a judgment granting to the plaintiff the relief sought should be affirmed.

APPEAL from a judgment in favor of the plaintiff, entered in Kings county upon the trial of this action by the court without a jury.

*Isaac S. Catlin*, for the appellants.

*John L. Hill*, for the respondent.

Barnard, P. J.:

The proof returned with the case shows that the plaintiff, in 1883 and subsequently, was engaged in the manufacture of iron trucks, and wheelbarrows of sheet iron, with iron handles. This business he had commenced in 1881, and there had been an interval of cessation on account of his ill health. He had expended about $1,000 in developing improvements in them so as to make them of commercial value. In February, 1883, he employed the defendant, George Wren, at a weekly salary of eighteen dollars, " to apply himself personally to the development of this business; to develop the truck and wheel-barrow business; he went under that name with us."

In the early part of the employment the defendant, George Wren, was employed upon the wheelbarrows. After being thus employed about a fortnight, he went to developing trucks. Wren and the plaintiff were in constant consultation about the business. Wren was a skillful draughtsman and he made drawings of the proposed improvements. Patterns were made of iron therefrom, so as to manufacture the wheelbarrows and trucks. The design was to get patents for the improvement and engage outside capital in the enterprise, and the patents were expressly to be in the name of the plaintiff.

Considering the relation of the parties and the nature of the employment, it would equitably follow that the patents should belong to the plaintiff, if any were obtained as the result of the joint development of the parties. The plaintiff was in the business of manufacture, and he employed the defendant, George Wren, to aid him in devising improvements so as to aid the business. It would be most unreasonable for the employe, under these circumstances, to patent the improvements, and thus destroy the right of the plaintiff to use the result of his and Wren's invention. The agreement but carries out what would be the result without it from the evidence. The defendant, George Wren, says that the truck inventions were separate and outside of the arrangement. The finding is against this claim and this accords with the probabilities resulting from the employment. The plaintiff's business included both, and the subsequent conversation in respect to additional compensation in respect to the truck, from the profits of their sale, has no relevancy to the question as to the title to the patents. In 1884, George Wren made

application for a patent for truck improvements, and assigned the same to the defendant, Wm. C. Wren, who obtained a patent therefor in his own name. This patent equitably belongs to the plaintiff. It was the result of investigation under the employment, and by the agreement belonged to the plaintiff. (*Burr* v. *De La Vergne*, 102 N. Y., 415.)

The assignment to the defendant, Wm. C. Wren, by his brother, was made with the intent to deprive the plaintiff of his title thereto under the agreement. The case is voluminous and an examination of the evidence shows abundant evidence to support this finding. It was taken with full knowledge of plaintiff's claim and could have had no object beyond removing the title from the defendant, Wm. Wren. The point is not sustained which questions the authority of this court to pass upon the question presented. While the validity of an infringement of a patent is not within the jurisdiction of the State courts, questions of title to a patent under contracts have frequently been entertained. (*De Witt* v. *Elmira Nobles Mfg. Co.*, 66 N. Y., 459; *Continental Store Service Co.* v. *Clark*, 100 N. Y., 365.)

The judgment should, therefore, be affirmed, with costs.

DYKMAN, J., concurred.

PRATT, J.:

This is a suit to compel defendant, George Wren, to assign certain letters patent, for an invention in hand trucks, issued to him as assignee of W. C. Wren (the alleged inventor who made application for a patent and assigned the right to the letters to said George, his brother). Plaintiff alleges that the invention became his property as the result of a contract by which W. C. Wren entered his employment for the special and limited service of *inventing* wheelbarrows and such trucks. The learned trial judge found the special employment and service, and that the invention was perfected during that service; he adjudged that plaintiff was the owner of the property in the invention as the result of an understanding, a part of the contract of employment of or service being that he should be the owner of all inventions made by W. C. Wren while in that service.

We think this conclusion was clearly right on the merits. Plaintiff had been striving to invent wheelbarrows and hand trucks since 1880. W. C. Wren had assisted him in inventing a wheelbarrow. Overtaken by sickness he had to give up his plans until about the beginning of 1883, when he resumed his efforts to invent wheelbarrows and trucks with the purpose of manufacturing and selling them to the trade, provided he succeeded in inventing something that would sell. He had not yet succeeded in perfecting anything. This work of inventing was the matter in hand in February, 1883. Both parties so understood it. This, work of inventing was what plaintiff called " *developing* the wheelbarrow business," that being a phrase covering the work of inventing both wheelbarrows and trucks. This was also clearly understood by both the contracting parties. The invention was perfected during that service. W. C. Wren well knew that Annin expected and believed that his inventions would be Annin's property, and knowingly suffered him to remain in that belief, and on that understanding drew and appropriated his salary at eighteen dollars per week from about the middle of February, 1883, to the end of that year. About election of 1883 they had a dispute whether or not the truck invention was Annin's property, and about some other matters. They submitted it to arbitrators who awarded that all the inventions belonged to Annin. This award covered the truck invention as part of the dispute. Defendant George Wren assisted W. C. Wren in all this and never intimated any personal interest in the truck invention. W. C. Wren accepted and professed acquiesence in this award and induced Annin to rely on his acquiesence, who while relying thereon continued to pay him his salary. But meantime, after the award and acquiesence, while drawing the salary and professing faithful service, W. C. Wren secretly made application for letters patent and assigned the rights to the letters to George, who all the while well knew Annin's rights and the circumstances on which they were based. George then obtained the letters in his own name.

The special service of *inventing* under a special *employment to invent* gives the master the servant's invention which results from that service. (Simonds Manual of Patent Law [ed. 1883], pp. 202, 204.) This is also the principle of that part of the decision of

*Burr* v. *De La Vergne* (102 N. Y., 415), which relates to the inventions made by De La Vergne alone. The same is true of *Binney* v. *Annan* (9 Am. Rep., 10; S. C., 107; Mass., 94). None of the patent cases are inconsistent with the principle above indicated. Even in *Hapgood* v. *Hewitt* (11 Fed. Rep., 422; lately affirmed, 119 U. S. Rep.), 227. Judge GRESHAM excepts the case of a special employment *to invent*. The special service of inventing is the entire scope of the employment. There is no room left within the employment for inventing on his own hook. The servant has no right to think or invent for himself on this particular subject matter in hand. He must get out of such a relation before he can claim the product of his work under such an employment. He cannot carry off both his salary and the only valuable product of his work under such an employment, leaving his master with his useless models, the results of his uselessly spent money on tools, machinery, time, labor of self and employees, with only a license or shop right which is not assignable or useful in any way save to himself. Such a result would necessarily defeat the whole purpose of the contract and the contracting parties. The cases resulting in mere license were those of general employment; at all events, they were not special employments for the *limited* service of *inventing*. Plaintiff was so careful to confine this man to this particular work that he made special arrangements with him when he did anything else. There is no ground for doubting the jurisdiction of this court to adjudge this matter of Annin's right to this invention as a piece of property wrongfully diverted from him to George Wren, on the theory of a violation of trust relations and obligations. (*Hat Sweat Co.* v. *Reinohel*, 102 N. Y., 167; *Cont. S. S. Co.* v. *Clark*, 100 id., 365; see, also, *Middlebrook* v. *Broadbent*, 47 N. Y., 444; *Bebee* v. *McKenzie*, id., 662; *De Witt* v. *Elmira Nobles Mfg. Co.*, 66 id, 459; *Page* v. *Dickerson*, 10 Am., 532; *Binney* v. *Annan*, 107 Mass., 94.) The federal courts have held that they have no jurisdiction in such cases unless by reason of the citizenship of parties. (*Hartell* v. *Tilghman*, 99 U. S., 547; *Wilson* v. *Sandford*, 10 How. [U. S.], 99; *Brown* v. *Shannon*, 20 id., 56; *Albright* v. *Teas*, 16 Otto, 613; *Blanchard* v. *Sprague*, 1 Clifford, 288; *Hill* v. *Whitcomb*, 1 Holmes, [U. S.], 317; *Goodyear* v. *Union Rubber Co.*, 4 Blatch., 63; *Messerole* v. *Union P. C. Co.*, 6 id., 356.)

The judgment was confined to the power indicated by *Conl. S. S. Co.* v. *Clark* (100 N. Y., 335).

The judgment should be affirmed, with costs.

Judgment affirmed, with costs.