Daniels, J.
The deceased intestate, Katharina Strutzkober, left no descendant, but left her husband, surviving her, to whom letters of administration upon her personal estate were issued. He afterwards died, leaving a part of that estate unadministered. The value of the part so left has not been stated, but as the whole estate was of no greater value than the sum of sixty-four and 19-100 dollars, the residue still remaining to be administered is probably so small as to have rendered it the duty of the public ad *940 ministrator to have acquiesced in the decision of the surrogate and thereby avoided the danger of wasting it in unnecessary litigation.
The petitioner for the letters on this unadministered estate, and to whom they were directed to be issued, is the sole legatee of the deceased husband, and the executrix of his estate, to whom letters testamentary have already been issued by the surrogate. And it was evidently under the impression that letters of administration on the unadministered estate of the wife were still necessary to complete her authority, that she made the application which was presented in her behalf. Whether that view was well founded or not it is not necessary now to decide. ’ For under no justifiable construction of the statute did the public administrator become entitled to such letters.
That clearly follows from the language of the statute, declaring that “in case of a married woman dying intestate her husband shall be entitled to administration in preference to any other person, as hereinafter provided.” The further provision in this manner referred to declares the husband, when otherwise competent, to be solely entitled to administration on the estate of his deceased wife, and to be liable for her debts to the extent of the assets received by him, and it then proceeds, “if he shall die leaving any assets of his wife unadministered they shall pass to his executors or administrators as part of his personal estate, but shall be liable for her debts in preference to the creditors of the husband.” 3 R. S., 6th ed., 77, § 33.
The effect of these provisions was to vest the unadministered estate of the wife in the executrix of the husband, by virtue of her appointment to that office. And it would be plainly inconsistent with that vesting to appoint another person to administer it. For the plain intent of the law by vesting the estate in her as executrix was to empower her, and also to render it her duty, to administer it And so it was considered by the chancellor, maintaining the power of the personal representative of the husband to collect the outstanding obligations of the estate of his deceased wife, in Roosevelt v. Ellithorp, 10 Paige, 415, 419, 420, and Lockwood v. Stockholm, 11 id., 88, 91, 92.
Her personal estate vested in her husband at the time of her decease, through his right of administration, for his own exclusive benefit, after the payment of her debts. This was the common law, perpetuated by the statute, and it was not changed where the wife left no" descendants by anything contained in chapter 782 of the Laws of 1867. Barnes v. Underwood, 47 N. Y., 351. And all that he left unadministered vested in his personal representative, after his own decease, as part of his own personal estate. And that letters may be issued to his representative, for the administration of the part of the wife’s estate left unadministered by him, was held in the case of Harvey, 3 Redf., 214, which in a note added to the report of the decision is stated to have been affirmed by the general term, in this department A different conclusion appears to have been adopted by the surrogate of Livingston county, in Matter of O'Niel, 2 Redf., 544. But as this *941 was not consistent with the provisions of the statute, and was in effect overruled in the later case just mentioned, it cannot be permitted to apply to the disposition of this appeal.
The surrogate was plainly right in refusing letters to the public administrator, and his decision should be affirmed, without costs.